[No. 9152.  In Bank.—August 29, 1885.]

## PETER G. SHARP, APPELLANT, v. JOHN M. BLANKENSHIP, RESPONDENT.

DIVISION LINE—PAROL AGREEMENT—STATUTE OF FRAUDS.—A parol agreement between co-terminous proprietors of land that a surveyor should run a line between their respective tracts, and that such line should become the division line, is invalid under the Statue of Frauds.

APPEAL from a judgment of the Superior Court of San Joaquin County, and from an order refusing a new trial.

The facts are stated in the opinion of the court.

*W. L. Dudley*, and *J. B. Hall*, for Appellant.

The parol agreement to have the division line surveyed and to abide by the result was within the Statute of Frauds, and not binding.  (*Jackson* v. *Long*, 7 Wend. 169.)

*J. C. Campbell*, and *F. T. Baldwin*, for Respondent.

The agreement as to the survey was not void under the Statute of Frauds.  (*Kincaid* v. *Dormey*, 47 Mo. 337; *Kellum* v. *Smith*, 65 Pa. St. 86; *Orr* v. *Hadley*, 36 N. H. 575.)

THORNTON, J.—Action of rejectment to recover a tract of land situated in San Joaquin County.  Both parties claim under Charles M. Weber.  The land in controversy was parcel of a rancho known as the Campo de los Franceses, of which Weber was the owner.  The litigation is in regard to a boundary line between the plaintiff and defendant.  The boundary line in controversy is the western line of plaintiff and the eastern of defendant.

There was evidence tending to show that Weber had caused the rancho above named to be surveyed and subdivided into sections, the sections being sixty-nine (69) chains and seventy-two (72) links square, the side lines of the section being a little less than ten chains short of a mile, and that these sections were subdivided into four quarters, constituting four squares of equal area. There was also evidence tending to show that this boundary line in dispute was marked by stakes set in the ground when the survey of the rancho was made by Weber; that the boundary line in dispute was marked by corner posts or stakes that were pointed out to Balch, the grantor of defendant, in 1858 by Weber. This appears to have been done in 1858 when Balch was negotiating with Weber for the land which was afterwards purchased by Balch of Weber, and this Weber conveyed to him. The evidence further tended to show that the western boundary line of plaintiff was marked by corner posts or stakes. There was no controversy that plaintiff owned the southeast quarter of section twenty-six, and that defendant owned the portion of the southwest quarter of same section, adjoining in its whole length on the west the southeast quarter.

The testimony also tended to show that soon after Balch went into possession in 1857, he built a fence from corner section post to corner section post on the west line of southeast quarter of section twenty-six; that it remained there until some time in 1877 or 1878, when a controversy arose between plaintiff and defendant as to the boundary line between them, defendant claiming that plaintiff had in his possession within the fence above mentioned some of his (defendant's) land. This plaintiff denied, but averred that he did not wish to deprive defendant of any land owned by him. Under this state of things an arrangement was entered into between them by which a surveyor was employed to run the disputed line between them at their mutual expense. This appears to have been done, and the line as surveyed and run did show that plaintiff's enclosure did contain land that was a part of southwest quarter of section twenty-six belonging to defendant. Plaintiff insisted that the line was not correctly run, was not on the true line, and there was evidence to show that he never agreed to accept or adopt the line thus run as the true line.

The plaintiff requested the court to charge the jury as follows:—

"Although the jury shall find from the evidence that the plaintiff agreed with the defendant in 1877, or thereafter, that the county surveyor should run the line between their respective lands, and such line should become the line on which the division fence should be built, yet if the jury shall further find that said plaintiff, at any time before the entry of said defendant on the land in suit, refused to accept or adopt the said surveyed line as the true and correct line, the jury must consider the case in the same light as if plaintiff had not agreed to have the line surveyed, and as if no survey had in fact been made." This request was refused and plaintiff excepted.

It is apparent from what has been above stated that the evidence tended to show that the plaintiff derived title to the part of land known as southeast quarter of section twenty-six, the western boundary of which was marked by stakes or posts put in the corners by Weber for that purpose, and that plaintiff took possession and built the fence on this line according to the line so marked.

Now if plaintiff obtained title to and became the owner of the quarter section above mentioned, bounded on the west by a fence between the posts above mentioned, it would be difficult to perceive, under the Statute of Frauds of this State in force at the time the transactions referred to took place, why he lost it by a line surveyed in the manner above pointed out, to which he never agreed. If the line thus surveyed had been adopted by both parties, and possession taken accordingly and held for a period of time sufficient to build up a title by adverse possession, it might be held that the title would have vested in them according to the line so adopted and acted on; but there is no such evidence here. (See *Adams* v. *Rockwell*, 16 Wend. 285, and cases there cited and commented on.) Indeed there is evidence which if true, proves that the plaintiff never agreed to or adopted the line.

The court erred in refusing this instruction. Nor was the error cured by giving it with the words appended by the court. The words appended are, "except so far as the evidence in regard to the agreement of survey may tend to show that there was no acquiescence on the part of Blankenship in the old line."

We cannot perceive that the words appended are at all pertinent to or had any connection with the matter of the request.

The latter relates only to a new line, and the former to the old line, which appeared to be and was entirely different from the new. The question whether Blankenship, the defendant, acquiesced in the old line or not, had no connection with the proposition stated in the request in regard to the new line. The request did not tend in any way to take from the consideration of the jury anything in the case bearing on the issue of the acquiescence of defendant in the old line. The words added to the request by the court certainly had a tendency to lead the minds of the jury away from the question which should have been submitted to them as embodied in the request.

For this error the judgment and order are reversed and the cause remanded for a new trial.

MORRISON, C. J., McKINSTRY, J., ROSS, J., and MYRICK, J., concurred.