## WELBORN v. KIMMERLING ET AL.

[No. 6,458. Filed October 28, 1909. Rehearing denied June 2, 1910.]

1. BOUNDARIES.—*Contracts.*—*Estoppel.*—*Real Property.*—Where adjoining landowners determine the true boundary line between their lands, and place a partition fence thereon, such line becomes the fixed boundary, and the parties are thereafter estopped from questioning it. p. 102.

2. EJECTMENT.—*Action—Recovery.*—*Title.*—The plaintiff in an action in ejectment must recover on the strength of his own title, and not on the weakness of defendant's title. p. 103.

3. EJECTMENT.—*Action.*—*Demand.*—Where the defendant is in peaceable possession of land, a demand therefor must precede an action in ejectment. p. 103.

4. EJECTMENT.—*"Demand."*—*Sufficiency.*—A mere claim of title in a conversation with defendant does not constitute a demand for possession of the land in controversy, but the use of the word "demand" is not essential, where other words of the same import are used. p. 103

5. ACTION.—*Demand.*—*Claim.*—A demand is a peremptory claim to a thing as a matter of right and admits of no doubt; while a claim implies that the right asserted is doubtful and that negotiations may be had to determine it. p. 104.

From Madison Circuit Court; *John F. McClure*, Judge.

Action by Abraham Kimmerling and another against William J. Welborn. From a judgment for plaintiffs, defendant appeals. *Reversed.*

*William A. Kittinger* and *William S. Diven*, for appellant.
*Willis S. Ellis*, for appellees.

WATSON, J.—This was an action in ejectment for a small tract of low and marshy land of about three acres, lying along a ditch. It is alleged in the complaint that appellant is holding possession thereof without right, and has for three years or more unlawfully kept plaintiffs out of possession.

There are three assignments of error, but appellant contends only for the error under the third assignment, to wit: "The court erred in overruling the motion for a new trial."

Two reasons assigned in the motion for a new trial are that the verdict of the jury is not sustained by sufficient evidence and that it is contrary to law.

The land originally was owned by Davis Welborn, father of appellant, who entered it in 1836, the tract containing eighty-nine and thirty-two one-hundredths acres. In 1845, Davis Welborn conveyed the land to his son, Lewis. In 1850 said Lewis Welborn and wife reconveyed the same land to Davis Welborn. The land was located in Madison county, Indiana, and described as follows:

"Commencing at the southeast corner of the west half of the northwest quarter of section nineteen, township twenty-one north, range seven east, thence north thirty-seven rods, thence west nine rods, thence north nineteen rods, thence west forty-one rods, thence north to a certain branch, thence, with the meanderings of said branch, to the north line, thence west to the section corner, thence south to the half mile stake, thence east to place of beginning."

Davis Welborn died in 1867, the owner of the land, leaving a widow, appellant Lewis Welborn, and other children as his heirs at law. A number of conveyances, by quitclaim deeds of their undivided interest, to William J. Welborn were made, and a partition proceeding among the heirs of said decedent was had in 1878. In 1879 a partition proceeding was had by William Welborn, Lewis Welborn and Eliza Johnson, who were then the owners of the entire tract, and their interests were set off to them in severalty, forty-four and

ninety-three one-hundredths acres thereof being set off to William J. Welborn in the northwest part of the tract, which included the land in controversy.

In 1886, for the purpose of squaring up their fields, Lewis Welborn made a deed to William J. Welborn for a small tract on the east line, and William J. Welborn made a deed to his brother, Lewis, for a strip along the south line of Lewis's land. In this exchange Lewis had the deeds made, and it was done for the purpose of giving Lewis a strip along his south line, as stated, and was not intended to go to the drain. This fact was undisputed.

In 1887 Lewis Welborn conveyed to appellees the portion of land set off to him in the partition proceeding. The contents of this deed—as to the number of rods running west— are in controversy. The record made on June 3, 1887, of the deed executed in January, shows the description on controverted lines "sixty-one rods west to a ditch or branch, thence north with meanderings of drain," while the testimony of Edward Osborn, John Swift, Samuel Welborn and Frank Welborn is that the original deed, which Abraham Kimmerling had at the time the lines were fixed, read "thence west fifty rods, thence north to a ditch."

Some two or three years after 1887 there was a fence built straight across the south end of appellant's tract, and this included the land in controversy. Thereafter appellant cleared his fields straight with the south fence. Some time after this, appellees moved their fence on the east side of the drain, and this threw the land in controversy in appellee's field. The fence continued in this place until the spring of 1902, when it was desired to rebuild the fence on the south of Kimmerling's land, it being the east and west fence. Abraham Kimmerling and appellant had a conversation, in which Kimmerling thought Welborn, "was upon him some," and Welborn said: "If I am, I do not want it." Thereupon they agreed to compare deeds, and within a short time afterwards Kimmerling took his abstract and deeds over

to Welborn's, and they compared their deeds and abstracts. The next day Abraham Kimmerling took his deeds over to appellant's, and the deeds were again compared. This was done for the purpose of ascertaining, if possible, the true line dividing their lands. Frank Welborn, Samuel Welborn, Abraham Kimmerling and Ed Osborn measured off a wire, took the wire and deeds out to the field, and measured from the southwest corner north seventy-three rods, and three feet, and set a stake, then went to the southeast corner, and measured seventy-three rods and three feet. John Swift, a neighbor, met them on the east line, and they all read Kimmerling's deed. It read, so testified to by these parties: "Seventy-three rods and three feet, thence west fifty rods, thence north to the drain, thence with the drain," etc. They then measured fifty rods west and stopped. Frank Welborn asked Abraham Kimmerling if he was satisfied. Kimmerling replied: "I guess I'll have to be," as testified to by Frank and Samuel Welborn, Osborn and Swift, but Abraham Kimmerling puts it: "I'll be satisfied if I have to be." They went ahead and staked the line to the drain, which was fifty rods.

Abraham Kimmerling returned home, talked it over with his wife, who is one of the appellees herein, and informed her that Welborn claimed "the corner down there." Within a few days Abraham Kimmerling met Frank Welborn, and requested that he be allowed to build the fifty rods of fence east and west, and thereupon it was agreed that he should, and that appellant should build the north and south fifty rods. Appellant built his fifty rods of fence, which was within a few rods of the home of appellees, and Abraham Kimmerling hauled the old fence away from the south, where he afterwards built his fifty rods of new fence on the line so fixed by this agreement. Each party thereupon took possession of and cultivated the land up to the new fence, and no objections or protests were made. In thus agreeing upon the line, appellees got from appellant an additional

strip of ground along the entire south line, and appellant got the land in controversy from appellees. No objection was made to the line thus established until September 25, 1902, when this action was commenced by appellees against appellant for the possession of said three acres and for damages.

Our attention has been called to the fact that the distance in the original deed was fifty rods west from the east line of said tract, and this is the same distance as fixed by the line in 1902 by the parties to this suit, and is the line upon which the new fence was built. The record discloses that in 1867 this very line was in question. It is claimed that appellant and his father, Davis Welborn, had a conversation with reference thereto, but nothing was done, and it continued unsettled until the parties in this case established what they believed, from their deeds, to be the true line dividing their lands, and thereafter built their fence upon the line so agreed upon.

It is the law that where the dividing line between adjoining landowners is uncertain, and over which the parties interested are in doubt, and they meet and from their deeds

1.  make measurements or otherwise ascertain what they believe to be the true dividing line, and so establish it as such, and thereupon by agreement divide the partition fence so that each is to build one-half thereof, and afterwards each builds his fence according to the agreement, and each takes possession up to the line so established by them and cultivates said land with his other lands, the parties are thereafter estopped from asserting that the new fence thus built on the line so fixed and agreed upon by them is not the true dividing line between their lands. *Meyers* v. *Johnson* (1860), 15 Ind. 261; *Tate* v. *Foshee* (1889), 117 Ind. 322; *Horton* v. *Brown* (1891), 130 Ind. 113, 116; *Sharp* v. *Blankenship* (1885), 67 Cal. 441; *Miller* v. *McGlaun* (1879), 63 Ga. 435; *Sonneman* v. *Mertz* (1906), 221 Ill. 362, 77 N. E. 550; 4 Am. and Eng. Ency. Law (2d ed.) 860; 5 Cyc. 935-B, and authorities cited.

So in this case, where the parties met in order to determine

the dispute and uncertainty between them with reference to the boundary dividing their lands, agreed upon a certain line as and for such boundary, and thereafter both parties built their allotment of the partition fence as agreed upon, and each, by the consent of the other, went into possession of the land so enclosed by said fence contiguous to his land, and thereafter claimed and occupied for more than six months, without objection, his tract up to the land so agreed upon, each is estopped from repudiating his agreement.

It is a familiar rule that a plaintiff in ejectment must recover on the strength of his own title, and show in himself a present right to enter and take possession, without regard to the character of defendant's possession.

2.

In this contention appellant is correct. *Clawson* v. *Doe* (1840), 5 Blackf. 300; *Stackhouse* v. *Doe* (1841), 5 Blackf. 570; *Doe* v. *Brown* (1844), 7 Blackf. 142, 41 Am. Dec. 217; *Prentice* v. *Wilson* (1852), 14 Ill. 91; *Prigg* v. *Pennsylvania* (1842), 16 Pet. (U. S.) *539, 10 L. Ed. 1060.

It is contended by appellant that the parties hereto having removed their old fences and built the new ones on the lines so agreed upon, each party thereby acquiring land from the other that had theretofore been occupied by him, and each going into possession of his land so acquired by the establishment of this line and by the consent of each other, there must be a demand before suit will lie.

3.

But appellees contend that demand was made before the bringing of this action; that it was made by Harvey Kimmerling at the request of his father, one of the appellees. He testified in reference thereto as follows:

4.

"Well, we met and passed the time of day, and I asked him about this land, whether or not he thought they really had any claim on it according to the titles that he had given to Mr. Lewis Welborn, and he laughed, and that was about all the answer that was made at that time. * * * Well, I

said to him, when I first mentioned it, that my father and mother were not satisfied, and would like to have the thing settled peaceably.''

It is not necessary, however, that the word "demand" be used in making a demand before the bringing of a suit, but if any word or words are used and understood by both parties that a demand is being made, then that would be sufficient.

5. A demand is a peremptory claim to a thing as a matter of right. It differs from a claim, in that it presupposes that there is no defense nor doubt about the question of right. Demand will not admit of delay, while, on the other hand, claim implies that the right is or may be doubtful, and that negotiations shall be had to determine it. The language thus employed by witness Kimmerling, with the most favorable construction to appellees, would amount only to a claim, and falls short of being a demand for the possession of the real estate involved in this controversy.

The verdict of the jury was not sustained by sufficient evidence, and is contrary to law. It is unnecessary for us to pass upon other reasons assigned in the motion for a new trial, as they may not occur at the retrial of this cause.

The judgment is reversed, with instructions to the trial court to sustain the motion for a new trial.

## On Petition for Rehearing.

Watson, P. J.—Appellees, in their petition for a rehearing, complain that the court has not correctly stated the record. We have taken the trouble to examine the record again and find it verifies the statements with reference thereto made in the opinion in this cause.

No sufficient reason being presented in the petition, why the court erred in its decision of this cause, the petition is overruled.