BRIGHT NATIONAL BANK *v.* HANSON.

[No. 9,022. Filed June 9, 1916. Rehearing denied November 23, 1916. Transfer denied June 21, 1918.]

1. BILLS AND NOTES.—*Action on Note.—Defenses.—Pleading Fraud.*—In an action on notes, an answer of fraud alleging that plaintiff, the holder of the notes, united with the payee, an administratrix, in fraudulently inducing defendant to execute them is good as against demurrer, even though the estate of the administratrix may not have been bound by her false representations. p. 68.

2. APPEAL.—*Briefs.—Waiver of Error.*—Assigned errors which are not mentioned or referred to in the points and authorities in appellant's briefs are waived. p. 68.

Bright Nat. Bank *v.* Hanson—68 Ind. App. 61.

3. BILLS AND NOTES.—*Actions.—Defenses.—Fraud.—Pleading.— Bona Fides.—Burden of Proof.*—In an action by an assignee of notes against the maker, an answer setting up that the execution of the notes was procured by fraud is sufficient. without an allegation that plaintiff had knowledge of, or connection with, the fraud averred, since, when a note is shown to have been obtained by fraud, the holder must show that he took it before maturity, without notice and for a valuable consideration. p. 70.

4. EXECUTORS AND ADMINISTRATORS.—*Administrator's Torts.—Liability of Estate.*—Generally an estate will not be rendered liable for any damages resulting from any false statements, representations, or warranties made by the administrator. p. 71.

5. EXECUTORS AND ADMINISTRATORS.—*Management of Estate.— Fraud of Administrator.—Liability of Estate.*—Where the court gave an administratrix full and general authority to carry on deceased's business, and in so doing she fraudulently, but within the apparent scope of her powers, obtained certain notes and turned them over to the estate, her fraud was chargeable to the estate. p. 71.

6. SALES.—*Rescission by Buyer.—Return of Consideration.—When Necessary.*—A buyer defending an action on the purchase notes on the ground of fraud need not allege and prove an offer to return the goods where they were worthless. p. 74.

7. APPEAL.—*Review.—Harmless Error.—Admission of Evidence.—* Error, if any, in permitting an agent to testify as to the agency relationship was harmless, where there was other uncontradicted evidence establishing the fact. p. 75.

8. SALES.—*Action for Price.—Defenses.—Rescission.—Damages.—* Where one has been induced to purchase property by the seller's fraudulent representations, he may rescind the contract and offer to return anything of value received under it or may stand upon his contract and recover as damages the difference between the actual value of the property at the time it was received and its value if it had been as represented. p. 77.

9. SALES.—*Action on Notes. for Price.—Defenses.*—A defrauded buyer who has given his notes for the purchase price has the same defenses in an action by the seller on the notes as in a direct action for the purchase price. p. 77.

10. SALES.—*Action for Price.—Defenses.—Pleading.—Variance.—* Where, in an action against the buyer for the purchase price of property, he filed an answer claiming a rescission for fraud, he should be confined to that theory, and is not entitled to have such answer in bar treated as a counterclaim under which he could recover the difference between the value of the property received and its value if it had been as represented. p. 77.

11. APPEAL.—*Review.—Harmless Error.—Refusal of Instructions. —Cure by Verdict.*—Where, in an action ·on notes given for the purchase price of goods, defendant buyer claimed a rescission of the sales contract for fraud, a refusal to instruct that he must restore or offer to restore everything of any value received under the contract was harmless, since the jury, in returning a verdict for defendant, must necessarily have found that the property for which the notes were given was of no value. p. 78.

12. APPEAL.—*Review.—Harmless Error.—Instructions.—Cure by Verdict.*—In an action on notes given for the purchase price of goods, where defendant buyer claimed a rescission of the sales contract for fraud, an instruction that the amount of plaintiff's recovery might be reduced by the difference between the fair market value of the property received and its value if it had been as represented, was harmless, where the jury, in returning a verdict for defendant, must necessarily have found that the property was valueless. p. 78.

From Noble Circuit Court; *Luke H. Wrigley,* Judge.

Action by Bright National Bank against Edward M. Hanson. From a judgment for defendant, the plaintiff appeals. *Affirmed.*

*J. Earl Fouts* and *Leffner, Ball & Needham,* for appellant.

*Gates & Whiteleather* and *Grant & Foote,* for appellee.

HOTTEL, P. J.—This is an action in which appellant,. a banking corporation, filed in the trial court three separate paragraphs of complaint, in each of which, respectively, it sought to recover on a note held by it as assignee.

The notes sued on are in substance the same, except as to amount and date of maturity, and this difference also distinguishes the several paragraphs of complaint, so that, for the purposes of the questions presented by the appeal, it. will be sufficient to indicate

the substance of the first note and the paragraph of complaint based thereon.   Such note is as follows:

> "$600.00   Town LaOtto, State Ind. Sep. 29, 1911.
>
> "On the first day of March, 1912, after date we, or either of us promise to pay to the order of the Medical Chemical Company South Omaha, Nebraska Six Hundred—0/100 Dollars, Payable Garrett Banking Co., value received, without discount or offset, waiving our rights to all exemptions allowed us by law, with interest at 6 per cent. from date, if not paid when due or when presented.
>
> "County of Noble          Edward M. Hanson
> "Witness: Dr. W. F. Larimer     38234    26122."

Said paragraph of complaint alleges in brief that appellant is a corporation; that appellee executed the note to the payee, the Medical Chemical Company; that when due it was presented for payment at the place named therein, viz., the Garrett Banking Company of Garrett, Indiana; that payment thereof was refused; that such note is past due and unpaid; that on September 29, 1911, Minnie Doty was the administratrix of the estate of William M. Doty, deceased, and as such under order of the Delaware Circuit Court, in carrying on the business of decedent, took and received said note from appellee by the style of The Medical Chemical Company (hereinafter referred to and designated the "M. C. Co."); that such company existed in name only, which name was adopted by the administratrix as a trade-name, the same having been used by the deceased in his lifetime; that such estate was the actual original payee of said note and the real owner thereof, the

name "M. C. Co." being placed therein as payee and
used as an accommodation to said estate, at the direc-
tion of the administratrix; that on December 7, 1911,
said administratrix by authority of the Delaware Cir-
cuit Court, for a valuable consideration, sold and de-
livered said note to Frank E. Hay as "Frank Hay,"
by indorsement on the back of said note as follows:

> "By virtue of an order of the Delaware Cir-
> cuit Court, of Delaware County, Ind. I as admin-
> istratrix of the estate of William M. Doty, de-
> ceased, hereby sell, assign and transfer the
> within and foregoing note to Frank Hay, for a
> valuable consideration, for and on behalf of said
> estate.
> > "M. Doty, Administratrix of the estate
> > of William M. Doty, deceased."

That at the time of this assignment said estate was
the sole and exclusive owner of such note, and by
such assignment the absolute and complete ownership
of such was passed to said Hay; that thereafter on
December 7, 1911, said Hay, for value, by written
indorsement on the back thereof, sold and delivered
said note to this plaintiff, which written indorsement
is as follows:

> "Pay to the order of Bright National Bank,
> without any recourse on me. Frank E. Hay."

That appellant is the owner and holder of said note.

The other notes are for $500 each.

Appellee filed an answer in seven paragraphs, the
first of which was a denial. The second amended
paragraph alleged that on September 29, 1911, appel-
lee entered into an agreement with the M. C. Co. to
purchase 20,000 pounds of stock food, claimed to be

manufactured by such company, and known as "Protection Stock Powder"; that in truth and in fact there was no M. C. Co., but appellee did not know this until long after said contract was made and said notes executed; that said name had been adopted by William Doty for the express purpose of deceiving and defrauding persons with whom he dealt; that Dr. W. F. Larimer was the agent of such company and entered into the contract with appellee for and on behalf of the so-called company. Here follows averments as to representations made by said Larimer with reference to the things to be done and furnished by such company and the many ailments of animals for which such powders were a remedy or cure, including also a representation that such company was a corporation financially responsible for all its contracts, and that such powders would be fresh and in good condition and would meet all the representations made by said M. C. Co. The answer then avers that for said stock powder and the other enumerated things to be done and performed by said M. C. Co. appellee executed the notes sued on, and then proceeds in substance as follows: At the time of making said representations Larimer knew that the powders sold to this appellee had been sold to one Frank E. Hay, and that notes were held by appellant and payment thereof had been refused by Hay; *that appellant knew of all the representations made by said Larimer, and knew that the purpose was to deceive appellee, and having purchased of said M. C. Co., or the said William Doty, or his representatives, said powders, the notes of the said Hay were to be returned to him and the notes of appellee taken in their place; that appellant accepted said notes from Hay*

*and had him indorse the same "without recourse" to it, all without the knowledge of appellee; that appellant, through its officers, was a party to the fraud practiced upon appellee, and knew at the time of making the said contracts that the powders which were furnished appellee were of no value at all, and that said notes were being executed without any consideration whatever passing to appellee;* that when such powders are manufactured they are in powder form, and it is intended that they shall be sold and used when in that form; that after a time they will become solid and hard, unfit for use and of no value; that the powders sold to appellee soon after delivery became hard and solid and were of no value; that Larimer, acting for said company, represented to appellee that said powders would not become hardened and solidified and were fresh and direct from the company, all of which was false and untrue; that all the said representations and statements of the said Larimer and of said M. C. Co. were false and untrue and made for the purpose of cheating and defrauding appellee and to induce him to execute the notes sued on; that appellee relied on said statements and representations and believed them to be true and was thereby induced to execute said notes.

To this paragraph appellant filed a demurrer for want of facts, which was overruled, and this ruling is assigned as error. Several objections are stated in the memorandum accompanying such demurrer, but the only objection to the sufficiency of such paragraph urged in appellant's brief is that it proceeds on the theory of fraud, and that an administratrix, under the law of this state, cannot be charged with fraud or fraudulent representations in making sale

of personal property of the estate, upon which she is administering; that whatever misrepresentation may have been made by said administratrix in the sale of said powders, if any, was a personal wrong, by which said estate could not be bound.

While this paragraph of answer contains averments, some of which we have not set out, *supra,* which might indicate a different theory, we 1. think, when considered in its entirety, its theory is as stated by appellant. However, as affecting the question presented by appellant's objection, *supra,* the legal proposition stated therein, if correct, would not be of controlling importance, because the facts stated in the italicized portion of said answer, *supra,* charge that appellant was a party to the fraud perpetrated on appellee, and hence makes the answer sufficient to avoid appellant's objections, even though its assignor, the estate of said administratrix, may not have been bound by the representations made by the agent of such administratrix.

The ruling on the demurrer to the third paragraph of answer is also assigned as error, but, as the question presented thereby is substantially the same as that presented by said objection to the second paragraph, it need not be further considered.

The fourth and fifth paragraphs of answer each aver that the notes in suit were given without any consideration, the difference between them being 2. ing that the fourth paragraph contains an averment not found in the fifth paragraph, to the effect that appellant knew when it purchased such notes that their execution had been fraudulently procured, and that they were given without consideration. A demurrer to each of these paragraphs was

overruled, and each of such rulings is assigned as error, but neither is mentioned nor referred to in appellant's points and authorities, and is therefore waived.

A reply to each of said paragraphs of answer was filed, in which it is averred that Minnie Doty was the administratrix of the estate of William M. Doty, deceased, appointed by the Delaware Circuit Court prior to the time of the execution of the notes sued on; that notice of her appointment had been made by publication in a weekly newspaper, and that she was acting under an order of the court, and under such order, and not otherwise, sold to this appellee the stock powder for which he executed his notes, that all of said facts were known by appellee when he purchased such powders and executed the notes in suit in payment thereof.

A demurrer to this reply was sustained, and this ruling is assigned as error and urged as ground for reversal. Appellant suggests no reason in support of his contention that is not in effect disposed of by our disposition of the ruling on the demurrer to the amended second paragraph of answer.

A seventh paragraph of answer was filed by appellee, which is not essentially different from the amended second or third paragraphs, except that it goes more into detail in the averments charging fraudulent representations made by Larimer, the agent of the administratrix, and omits all averments charging knowledge of and participation in such fraud on the part of appellant. It also expressly charges that the powder for which such notes were given were of no value, but does not charge that appellant knew such fact when it purchased said notes.

A demurrer to this answer was also overruled, and such ruling is urged as ground for reversal. The objections, *supra,* made to the amended second and third paragraphs of answer are repeated and urged against this paragraph. As this paragraph does not charge appellant with knowledge of or participation in the fraud charged in the sale of said powders, the question presented is essentially and materially different from that presented by such other rulings. The theory of this answer is that the "payee named in the note, the M. C. Co., was a fictitious company used by the administratrix of said estate, the true payee, and that the execution of the notes was induced by the fraudulent representations of Larimer as agent of such administratrix," and if the averments of such answer are in fact sufficient to show that the execution of such notes was fraudulently procured, the averments charging appellant with knowledge of, or connection with, such fraud were not essential to its sufficiency, because it has been uniformly held in this state that: "While the common-law rule protecting a *bona fide* holder prevails, yet they also hold that in order to receive its protection it devolves upon the plaintiff to show that he became a holder before maturity, without notice, and for a valuable consideration, whenever the defendant makes it appear that the note was obtained by fraud." *First Nat. Bank, etc.* v. *Ruhl* (1890), 122 Ind. 279, 23 N. E. 766; *Zink* v. *Dick* (1890), 1 Ind. App. 269, 273, 274, 27 N. E. 622; *Shirk* v. *Neible* (1900), 156 Ind. 66, 72, 59 N. E. 281, 85 Am. St. 150, and cases cited.

We must therefore determine whether the false representations alleged to have been made by the

agent of said administratrix in procuring the execution of such notes can be invoked as a defense to their collection. As hereinbefore indicated, appellant insists that any fraud or fraudulent representations made by such administratrix or her agent would be a tort and a personal wrong by which her said estate could not be bound.

It is no doubt true, as appellant contends, that generally speaking an estate will not be rendered liable for any damages resulting from any false statements, representations, or warranties made by the administrator. *Riley* v. *Kepler* (1884), 94 Ind. 308; *Huffman, Admx.,* v. *Hendry* (1893), 9 Ind. App. 324, 53 Am. St. 351, 36 N. E. 727, and cases cited. This is so because an administrator as such has no authority to make such statements, representations, or warranties for or on behalf of his estate, and hence, if liable at all, he is individually liable. However, we do not believe that this principle should be applied to a case where the administrator by the order of the court was authorized to carry on the business of his deceased, and where, in so carrying on such business, he fraudulently obtains and retains for such estate an unconscionable advantage and benefit. It appears from appellant's reply and from the evidence that this administratrix procured an order of the Delaware Circuit Court by which she was authorized as administratrix of said estate to carry on the business of her deceased husband in the name and style of the M. C. Co. The petition on which this order is based and the order itself are very broad and comprehensive. They give the administratrix full and general power and authority to "continue and carry on the business of her

deceased husband in the name and style of the Medical Chemical Company,'' which business "consisted in the sale of stock foods, medicines and powder for the use of horses and other stock.'' She was given authority to carry out the contracts of her deceased husband to employ persons to assist her therein, and to sell such notes held by her as administratrix as might be necessary in the carrying on and continuing of said business. In other words, the order, in effect, permitted the administratrix to step into the shoes of her deceased husband and continue and carry on his business for the benefit of his estate and employ agents to assist her therein. The acts of such administratrix in the matter were therefore akin to the acts of an agent of the estate of her deceased husband, rather than the acts of an administratrix proper of his estate. The representations therefore of said Larimer, who was the husband's agent, and who continued as the agent of the administratrix, were at least within the apparent scope of the authority given by such order. We do not mean to say that such order authorized said administratrix or her agent to make false representations, but the order allowed such administratrix to select and pursue her own method in carrying on such business. It should follow, we think, that if in carrying on such business she adopted a fraudulent method and thereby secured an unfair advantage or an unearned and unconscionable benefit to such estate, she as administratrix, while her estate retains the fruits of such fraud, ought not to be heard to defend, as against such wrongful act, that she had no right to make the representations whereby she secured to the estate such advantage and benefit. The consummation of

the fraud having been made possible by the court's order, a holding in accord with appellant's contention would in effect make the court a party to the fraud. Suppose this were a suit by the administratrix to recover on the note given for said powders, and there was an answer setting up the fraud, would a court, under the circumstances here shown, permit the administratrix to avoid such defense and recover for the estate the fruits of her fraud on the ground that she as such administratrix could not be bound by her fraudulent representations? To so hold would be not only to give to such fraud the sanction and approval of the court, but the court would thereby aid in its consummation by assisting and making it possible for the estate to obtain the fruits thereof.

The instant case is not essentially different from the supposed case. The fact that the estate has obtained the fruits of the fraud from the assignee of said note does not in our judgment affect the question under consideration. The assignee steps into the shoes of his assignor and is in no better situation than such assignor would be, unless a purchaser in good faith without knowledge of the fraud.

As especially applicable to the facts of this case, we quote the following language of the Supreme Court of Texas in the case of *Able* v. *Chandler* (1854), 12 Tex. 88, 92, 62 Am. Dec. 518: "Though the administrator of an estate cannot bind the estate by his warranty, or render it responsible in damages for frauds or torts, committed by him, yet in his dealings with third persons, in respect to the estate, he is not, by his representative character, absolved from the universal obligation to observe the dictates of natural justice and common honesty, which require

that he shall act fairly and not fraudulently. Nor can the estate which he represents be permitted to derive an unjust and unconscientious advantage, to the injury of those with whom its legal representative contracts, by means of his unauthorized fraudulent conduct.'' See, also, *Crayton v. Munger* (1852), 9 Tex. 285; *Williamson* v. *Walker* (1854), 24 Ga. 257, 71 Am. Dec. 119; *Ramsey* v. *Blalock* (1861), 32 Ga. 376, 380; *Rice* v. *Richardson* (1842), 3 Ala. 428; *Atwood v. Wright* (1856), 29 Ala. 346.

We therefore conclude that the trial court did not err in overruling the demurrer to said seventh paragraph of answer.

Under its motion for new trial appellant contends that the verdict of the jury is not sustained by sufficient evidence. In support of this contention, it is insisted in effect that appellee defended solely on the ground of fraud and no consideration; that the paragraphs of answer based on fraud did not plead a return or offer to return the powders for which the notes were given, but alleged that they were of no value; that the evidence discloses that such powders had value, and hence that under the pleadings, the defense must fail.

While the evidence on this branch of the case was by no means conclusive, there was some evidence to the effect that the stock powder was in a solidified state when it reached appellee, and when in such state it had no value. This was sufficient to prevent a reversal of the case on said ground.

It is insisted that the court erred in admitting in evidence a pamphlet upon which, and the statements therein made, appellee bases his proof of fraud in part. The objection made thereto was in substance

that the administratrix could not bind the estate by her representations. This objection is in effect disposed of by what we have said in regard to the sufficiency of the seventh paragraph of answer.

Appellant next insists that the court erred in permitting appellee to testify that Larimer told him that he was the agent for the Medical Chemical

7. Company—that he was a general agent. While it is true, as appellant contends, that agency cannot be proved by statements made by the agent himself, there was testimony of other witnesses in this case, which was uncontradicted, to show such agency, and in fact such agency seems not to have been contraverted. The error, if any, was therefore harmless.

The action of the court in refusing to give certain instructions tendered by appellant and in giving other instructions is relied on and urged as ground for reversal. Among the refused instructions tendered by appellant was the following: "The court instructs the jury that where the party elects to rescind a contract on the ground of fraud where he had actually been defrauded, he must restore, or offer to restore everything of any value which he received under the contract. He will not be permitted to undo the contract while retaining money or other thing of value delivered him under the terms of the contract."

Of the instructions given by the court, complaint is made of No. 4. In this instruction the court, after indicating what should be shown to establish fraud, said: "In such case if the facts above recited are established by a preponderance of the evidence the defense of fraudulent representation is made out,

and will reduce the amount of recovery upon the note to the extent of the difference between the fair market value of the property for which the note was' given, in the condition it actually was when delivered, and what such market value would have been if the property had been as represented. In such a case if the property in the condition that it was when delivered was worth $500 but would have been worth $1,000 if it had been as represented, then the recovery upon the note would be reduced in the sum of $500 or defeated altogether if such sum of $500 equaled the amount of the note and interest.''

Appellant, in effect, concedes that this instruction would be correct if appellee had sued appellant directly for damages, or had defended by way of counterclaim or set-off, but insists that appellee pleaded only answers in bar which proceeded on the theory that there was no liability on the notes sued on because they were procured by fraud and the stock powder for which they were given was of no value whatever.

We are of the opinion that appellant is right in its contention as to the theory of appellee's answers. Each of said answers are pleaded as a complete bar to the action. Neither of them is pleaded as a counterclaim, and neither alleges that appellee was damaged by the fraudulent representations set up therein. True, they each allege that the powders for which the notes were given were valueless, but such averment, in the absence of averments showing a return or an offer to return such powders, was proper and necessary to make the answers sufficient as an answer in bar, and, as before indicated, when such answers are read in their entirety, it is evident that such is

their theory, rather than as a counterclaim for damages.

Where one has been induced to purchase property by the fraudulent representations of the seller, such purchaser has a choice of remedies: (1) He 8. may, if he so desires, rescind the contract, in which case he must, in his action to rescind, aver and prove a return of the property received by him, or an offer to return it, or otherwise aver and prove that such property was of no value. (2) He may stand by his contract and keep what he received and in an action for damages recover the damages resulting from the fraud which, ordinarily, will be the difference between the actual value of the property as it was when received by the purchaser and what its value would have been if it had been as represented. *Wulschner-Stewart Music Co.* v. *Hubbard* (1909), 44 Ind. App. 526, 89 N. E. 794; *Jarrett* v. *Cauldwell* (1910), 47 Ind. App. 478, 94 N. E. 790; *Brier* v. *Mankey* (1910), 47 Ind. App. 7, 93 N. E. 672; *Love* v. *Oldham* (1864), 22 Ind. 51, 52; *Cates* v. *Bales* (1881), 78 Ind. 285. If such purchaser, as in the instant case, has given his note or obligation 9. for such property, he has the same remedies in an action brought by the seller on such note or other obligation. In either case, however, 10. as in all other cases, the remedy to which he is entitled must be determined from his pleadings, and if in the first instance he retains the property and brings an action to rescind the contract because of the fraud, alleging that the property received was of no value, or in the second instance, in an action against him for the purchase price of the property, defends with an answer in bar which

proceeds on the theory that the obligation sued on was fraudulently procured and given for property of no value, he should in either case be confined to the remedy to which his pleadings entitle him, and not be given the advantage of an opportunity to recover upon the theory that his pleadings in the one case might be treated either as an action to rescind or an action for damages, and in the other case as an answer in bar or as a counterclaim for damages.

While there is language in some of the decisions which may seem to authorize the instruction, *supra,* given by the court, the effect of such instruction was to give to appellee the advantage of having his answer in bar, based on the theory that the notes sued on were obtained by fraud in exchange for property of no value, treated also as a counterclaim for damages for the fraud reducing appellant's recovery in whatever amount the jury might find to be the difference between the true value of the property received by appellee and its value if it had been as represented, and hence, for the reasons above indicated, the giving of such instruction was error. *Crow* v. *Carver, Gdn.* (1892), 133 Ind. 260, 32 N. E. 569; *Reichert* v. *Krass* (1895), 13 Ind. App. 348, 40 N. E. 706, 41 N. E. 835; *Cleveland, etc., R. Co.* v. *Rudy* (1909), 173 Ind. 181, 186, 89 N. E. 951; *Cates* v. *Bales, supra.*

For the same reason it was error to refuse to give the instruction, *supra,* tendered by appellant. However, the verdict in this case being a verdict for appellee, it necessarily follows that the jury found that the stock powders for which the notes in suit were given were of no value, and hence no harm could have resulted to ap-

pellant from that part of the instruction given which we have held to be erroneous, and likewise no harm could have resulted from the court's failure to give the instruction, *supra,* tendered by appellant. *Southern R. Co.* v. *Crone* (1912), 51 Ind. App. 300, 310, 99 N. E. 762.

Appellant complains of the court's refusal to give other instructions, but, in so far as such instructions are not covered by the instructions given, the errors alleged to have resulted from such refusal present the same questions already considered. So likewise the errors insisted upon as resulting from the giving of other instructions present questions which are in essence and substance the same as those already considered and disposed of adversely to appellant's contention.

We find no reversible error in the record, and the judgment below is therefore affirmed.

NOTE.—Reported in 113 N. E. 434. See under (1) 8 C. J. 930; (6) 35 Cyc 149; (9) 8 C. J. 716.