NORBERT PILOTTE *v.* PEARL BRUMMETT, SIDNEY FARNEY, GRACE STOLLER AND JOSEPHINE FARNEY.

[No. 2-1173A255. Filed August 18, 1975.]

*Charles D. Boomershine, Boomershine & Boomershine,* of Monticello, *Frank E. Spencer,* of Indianapolis, for appellant.

*Louis Pearlman, Jr.,* of Lafayette, for appellees.

## CASE SUMMARY

BUCHANAN, J.—Defendant-Appellant Norbert Pilotte (Pilotte) appeals from a trial court judgment ejecting him from a farm owned by Appellees, Pearl Brummett, Sidney Farney, Grace Stoller, and Josephine Farney (collectively the Landlords), claiming (1) insufficient evidence to support the Landlords' possessory action for ejectment; (2) insufficient notice to terminate Pilotte's tenancy; and (3) erroneous admission of Josephine Farney's (Josephine) agency relationship to the Landlords.

We affirm.

## FACTS

The evidence and facts more favorable to the trial court's judgment are:

In the fall of 1970 Pilotte and his wife met with Josephine, Grace Stoller (Grace) and her husband, Walter, at the Stoller home to discuss the leasing of the Landlords' sixty-six (66) acre farm located in Tippecanoe County, Indiana, which they inherited in 1959.

Pilotte desired a three- or five-year written lease, but it was ultimately orally agreed that Pilotte would rent the farm on a year-to-year tenancy, beginning March 1, 1971 (farm leases in the area customarily began March 1 and ended

February 28). The terms of the oral agreement provided, inter alia, for crop sharing with the Landlords paying for one-half of the seed corn, seed beans and fertilizer.

Pilotte farmed and fertilized the disputed property as agreed during the 1971-72 farm year (March 1 - February 28), and the only conversation relating to Pilotte's farming for the 1972-73 farm year occurred when Pilotte and Grace and Walter Stoller were cutting stray corn stalks out of the bean field in June of 1971, and Pilotte said:

"Well, I don't know what you folks think about this mess, I wouldn't know but what a little later you might give me a notice to move."

Grace then replied,

"No, we're going to give you a chance of one more year."

There was no conversation about renting the farm for the 1973-74 farm year until November 24, 1972, when Pilotte received a "Legal Notice to Quit" (Notice; hereinafter set forth) from the Landlords. Josephine, Grace and Walter Stoller were present when the Notice was delivered to Pilotte by the Sheriff. When Pilotte expressed disappointment, they indicated to him their dissatisfaction with his farming methods and the fact his wife was no longer living with him.

Prior to the Notice neither Pilotte nor the Landlords requested renewal of the lease for the 1973-74 farm year. In the fall of 1972 Pilotte fertilized the acreage as he had done previously, a practice which was considered normal in that region, and was authorized by the Landlords. Also Pilotte planted fall wheat, which was not authorized by them.

In December of 1972, Pilotte notified the Landlords that he was not going to vacate the real estate and would hold over.

Thereafter, on December 26, 1972, the Landlords brought an Ejectment action seeking possession of the farm on the termination of the year-to-year lease, February 28, 1973, the end of the 1972-73 farm year. Pilotte's response was an answer stating as one of his defenses that the Complaint did

not state a claim on which relief could be granted . . . without further specificity.

Subsequent to the date of termination of Pilotte's tenancy, the court trial commenced March 13, 1973, and judgment was rendered March 30, 1973.

## ISSUE ONE

Is the trial court judgment granting the Landlords' ejectment action supported by sufficient evidence?

As to ISSUE ONE, Pilotte contends that for a successful judgment in ejectment the plaintiffs (Landlords) must have a right to possession at the time the action is commenced. Secondly, Pilotte asserts that the Landlords, by their conduct, are estopped to claim the tenancy ended on February 28, 1973.

The Landlords reply that at the time the trial commenced and the judgment rendered the Landlords were entitled to possession and Pilotte was wrongfully withholding possession. Further, the Landlords deny any estoppel and contend that Pilotte understood and agreed to the year-to-year lease.

DECISION—ISSUE ONE

CONCLUSION—It is our opinion that *under the particular circumstances of this case* the judgment of the trial court ejecting Pilotte should be affirmed.

Pilotte's insistence that there is insufficient evidence to support the trial court's judgment evicting him divides into two parts. First, even though he was given sufficient and timely statutory notice to quit the premises prior to expiration of his year-to-year tenancy he would have us reverse the ejectment judgment because the Landlords did not have the immediate right to possession at the time the action was commenced . . . although the right to possession did exist at the time of trial and judgment.

Correctly he contends that the ejectment statute (IC 1971, 34-1-48-1 (Burns Code Ed.))[1] requires that the one seeking

1. *"Action for possession.*—Any person having a valid subsisting interest in real property and a right to the possession thereof, may recover

ejectment must have an immediate right to possession at the time of the commencement of the ejectment action. Case law is to the same effect, the most recent one being *McClellan* v. *Beatty* (1944), 115 Ind. App. 173, 53 N.E.2d 1013. *Also see, Swaynie* v. *Vess* (1883), 91 Ind. 584; *Wilson* v. *Jinks* (1917), 63 Ind. App. 615, 115 N.E. 67; *Welborn* v. *Kimmerling* (1909), 46 Ind. App. 98, 89 N.E. 517. Typical is *Welborn* v. *Kimmerling, supra:*

"It is a familiar rule that a plaintiff in ejectment must recover on the strength of his own title, and show in himself a present right to enter and [take possession] without regard to the character of defendant's possession. In this contention appellant is correct. *Clawson* v. *Doe* (1840), 5 Blackf. 300; *Stackhouse* v. *Doe* (1841), 5 Blackf. 570; *Doe* v. *Brown* (1844), 7 Blackf. 142, 41 Am. Dec. 217; *Prentice* v. *Wilson* (1852), 14 Ill. 91; *Prigg* v. *Pennsylvania* (1842), 16 Pet. (U.S.) *539, 10 L.Ed. 1060." 46 Ind. App. at 103, 89 N.E. at 519.

However, none of these cases presented the exact factual situation before us, i.e., a proper and timely statutory notice to quit served on a year-to-year tenant who promptly indicates refusal to quit the premises (and does in fact hold over), prompting the landlord to commence an ejectment action, and, additionally, failure of the tenant to properly plead the landlord's lack of present right of possession, with trial held and judgment rendered after the landlord's right to possession has matured

For us to reverse the judgment now would be to allow a technicality to seize reason by the throat.

The entire thrust of the Indiana Rules of Procedure and of the Rules of Appellate Procedure is that judgments are not reversed for inconsequential errors. AP. 15(D) expresses this noble objective in these words,

"nor shall any judgment be stayed or reversed, in whole or in part, where it shall appear to the court that the merits of the cause have been fairly tried and determined in the court below."

the same by action to be brought against the tenant in possession; if there is no such tenant, then against the person claiming the title or some interest therein. [Acts 1881 (Spec. Sess.), ch. 38, § 671, p. 240.]"

This underlying philosophy is also expressed in TR. 1, "They [the Rules] shall be construed to secure the just, speedy, and inexpensive determination of every action". Harvey and Townsend emphasize "that technicality be subordinated to substance, and that error be ignored unless shown by the protesting party to have been prejudicial to him." 4 *Harvey and Townsend, Indiana Practice* § 61.1, p. 240. *See,* Civil Code Study Commission Comments to Indiana Rules of Procedure, Trial Rule 1; 1 *Harvey and Townsend, supra,* § 1.1, p. 212.

The folly of allowing form to triumph over substance is also recognized by TR. 61[2] (HARMLESS ERROR), which admonishes courts to "discharge any error or defect in the proceedings which does not affect the substantial rights of the parties".

Equity looks to substance rather than form: *State ex rel. McGonigle* v. *Madison Circuit Ct.* (1963), 244 Ind. 403, 419, 193 N.E.2d 242; *State* v. *Ahaus* (1945), 223 Ind. 629, 63 N.E. 2d 199, 204; *Wabash Valley Coach Co.* v. *Turner* (1943), 221 Ind. 52, 65-66, 46 N.E.2d 212; *Stillabower* v. *Foster* (1966), 140 Ind. App. 32, 37, 222 N.E.2d 292; *Leeka* v. *Muncie Savings & Loan Co.* (1919), 71 Ind. App. 318, 325, 124 N.E. 762.

To reverse this case for retrial would be an empty and futile gesture. The factual issues on the merits have already been decided and the likelihood of a different result being reached are remote. The *only* reason for reversal is the technicality of Landlords' failure to have a present right to possession at the commencement of the ejectment action—an action apparently prompted by Pilotte's notice that he would not vacate by March 1, 1973.

---

2. TR. 61 provides:
"No error in either the admission or the exclusion of evidence and *no error or defect in any ruling or order in anything done* or omitted *by the court or by any of the parties is ground* for granting relief under a motion to correct errors or for setting aside a verdict or for vacating, modifying or otherwise *disturbing* a judgment or order *or for reversal on appeal, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.*" (Our emphasis.)

It appears to us that the merits of the case have been fairly tried and determined and "petitioner has set forth nothing to indicate that if the cause were tried again on the merits that a different result would be reached". *Cantwell* v. *Cantwell* (1957), 237 Ind. 168, 178, 143 N.E.2d 275, 280 (*cert. denied,* 356 U.S. 225, 78 S.Ct. 700, 2 L.Ed. 712). Nor has Pilotte shown how he has been prejudiced by the Landowners' premature action. Particularly is this so because Pilotte may have invited the premature ejectment suit by his own action.

At the risk of engaging in vain repetition, we emphasize that in reaching the conclusion that the judgment of the trial court should be affirmed, our holding is narrowly confined to the peculiar circumstances of this case. We are not holding that the Landlords were entitled to a judgment for possession on any date prior to March 1, 1973 (the termination date of Pilotte's lease), nor that it would have been error for the trial court to have dismissed the Ejectment action if properly pleaded.[3] Neither do we decide whether a future lessor is or is not entitled to a declaratory judgment of a future right to possession [Ind. Ann. Stat. §§ 34-4-10-1 through 16 (Burns Code Ed. 1973), the Uniform Declaratory Judgment Act].

The second part of Pilotte's insufficiency argument is that because he fertilized the acreage in the fall of 1972 for the following year's crop (1973-74), the lease was thereby extended to continue for the 1973-74 farm year, and the Landlords are therefore estopped to deny any extension of his lease for the 1973-74 farm year.

Pilotte presents neither evidence nor applicable authority in support of this estoppel theory. There was contradictory testimony as to whether or not Landlords had knowledge of Pilotte's purchase of farm equipment and if purchased whether it was for use on the Landlords' farm or for use on an additional 400 acres farmed by Pilotte.

---

3. In fact, Pilotte's failure to plead lack of present right to possession may very well constitute a waiver as Judge White states in his concurring opinion.

His estoppel theory is not bolstered because of the undisputed fact he fertilized the acreage for the following farm year, 1973-74. There was evidence that the general practice in that region was to fertilize in the fall for the following year's crops; otherwise, the land would lie fallow for one year when tenancies terminated. Having been denied anything but a year-to-year lease, he was bound to know that his year-to-year tenancy (March 1 to February 28) was subject to termination at any time prior to December 1. IC 1971, 32-7-1-3 (Burns Code Ed.).

So, by fertilizing in the fall of 1972, while his oral year-to-year lease was still in effect, Pilotte was following the practice of the region and his own previous practice necessary to carry out the year-to-year lease should it not be terminated. His conduct in fertilizing was required of him by regional practice and contemplated by the parties in their mutual interest, and was not induced by the Landlords so as to form the basis for estoppel. *See generally, City of Evansville* v. *Follis* (1974), 161 Ind. App. 396, 315 N.E.2d 724; *Hoosier Insurance Co.* v. *Ogle* (1971), 150 Ind. App. 590, 276 N.E.2d 876.

## ISSUE TWO

Was the Landlords' Notice to terminate Pilotte's tenancy defective?

As to ISSUE TWO, Pilotte contends that because the Notice was signed by only two of the four owners it was insufficient.

The Landlords reply that the contents of the Notice were complete as required by statute and were sufficient to inform Pilotte that he must vacate the disputed land at the end of the 1972-73 farm year.

## DECISION—ISSUE TWO

CONCLUSION—The Notice of termination of Pilotte's year-to-year tenancy was not defective.

Pilotte does not favor us with any requirement of Indiana law, statutory or otherwise, that each owner of real estate

(landlord) must individually sign a Notice to Quit to a tenant, or that one or more co-owners cannot sign such a Notice on behalf of the others. And we know of none.

IC 1971, 32-7-1-3 (Burns Code Ed.) provides that tenancies from year to year may be terminated by giving notice to the tenant at least three months prior to the expiration of the year.[4]

IC 1971, 32-7-1-4 (Burns Code Ed.) provides a sample form of notice which may be used for such termination:

Form of notice in tenancy from year to year.—The following form of notice, or one substantially like it, may be used in the case of tenancy from year to year, the date, names and description being changed to suit each particular case:

Georgetown, Floyd County, Ind. Nov. 30, 1879.

To William Brown: You are hereby notified to deliver up to me, at the expiration of the current year of the tenancy, the possession of the following described premises, viz.: The southeast quarter of section six, in township two, south of range five, east in the county of Floyd, and state of Indiana, now held of me, by you, as tenant.

Isaac R. Keller.

[Acts 1881 (Spec. Sess.), ch. 72, § 4, p. 563]

The Landlords' Notice to Pilotte substantially follows the sample form set out by statute:

STATE OF INDIANA
COUNTY OF WHITE } SS:

LEGAL NOTICE TO QUIT

To: Norbert Pilotte
    Tippecanoe County
    Indiana

Wolcott, Indiana
Date: November 24, 1972

---

4. Notice to terminate tenancies from year to year.—Tenancies from one period to another.—All tenancies from year to year, may be determined by at least three [3] months notice given to the tenant prior to the expiration of the year; and in all tenancies which, by agreement of the parties, express or implied, are from one period to another, of less than three [3] months duration, a notice equal to the interval between such periods shall be sufficient. [Acts 1881 (Spec. Sess.), ch. 72, § 3, p. 563.]

You are hereby notified to deliver up to me on or before February 28, 1973, the possession of the following premises, to-wit:

(Legal description of subject property set out) owned by us and held by you as tenant.

/s/   Josephine Farney

Josephine Farney

/s/   Grace Stoller

Grace Stoller

The purpose of a notice to terminate a tenancy is to reasonably inform the tenant that the tenancy will not be renewed for an additional year and will terminate at the end of its current term. *See generally Dunphy* v. *Goodlander* (1895), 12 Ind. App. 609, 40 N.E. 924; *Epstein* v. *Greer* (1881), 78 Ind. 348. The Notice to Pilotte was timely served and reasonably calculated to inform him that he must give up possession of the farm at the end of his current tenancy, February 28, 1973. Apparently he understood its meaning because approximately two weeks later he notified the Landlords that he was not going to vacate.

The failure of two co-owners to sign the Notice did not render it defective. There was evidence from which agency could be inferred. Pilotte originally leased the premises and had subsequent dealings with Grace Stoller and Josephine Farney. Moreover, Pilotte understood that Josephine acted as manager on behalf of her brother and sisters, and therefore could create as well as terminate a tenancy.

## ISSUE THREE

Should Josephine Farney have been allowed to testify, over objection, of her right to act (agency) on behalf of the other Landlords?

As to ISSUE THREE, Pilotte contends that testimony by Josephine Farney as to her agency relationship with the other co-owners was conclusional and therefore erroneously admitted.

The Landlords answer that her testimony was merely a recital of the facts within her knowledge and, even if error, it was harmless as there was testimony by other witnesses, including Pilotte, of an agency relationship.

DECISION—ISSUE THREE

CONCLUSION—It is our opinion that the trial court did not err in admitting testimony of the agency relationship between Josephine Farney and the other co-owners.

Pilotte objected to the following question because it called for a conclusion on the part of Josephine Farney as to her agency:

"Was there one particular person that had the responsibility for seeing that the farm was rented?"

The trial court then overruled the objection but restated the question, asking Josephine, "Who took care of the renting of it?" to which Josephine replied, "I did".

It would seem that Josephine was merely stating the fact that she took care of renting the farm, and consequently left the ultimate question of her agency to the trier of fact.

Even if it is assumed she testified as to her own agency, any error was harmless because there was other uncontradicted evidence that Josephine did act in a managerial capacity on behalf of the other co-owners. [*Bright National Bank* v. *Hanson* (1916), 68 Ind. App. 61, 75, 113 N.E. 434.] Pilotte, himself, admitted that he was told by Walter Stoller that Josephine "was the boss".

The trial court's judgment is affirmed.

Sullivan, P.J., concurs; White, J., concurs with opinion.

### CONCURRING OPINION

WHITE, J.—In holding that the judgment for the plaintiffs-landlords should not be reversed even though they had no immediate right to possession at the time they commenced their ejectment action, we reach a result which is not only

fair in this particular instance, but a result which finds rational support in both the modern and the historic philosophy of pleading and practice.

Notwithstanding the many Indiana cases which either expressly state, or clearly imply, that to make a *prima facie* case a plaintiff in the trial of an ejectment action (in which no affirmative answer or plea in abatement has been filed) must prove that he was entitled to possession at the time he commenced his action,[1] there are, nevertheless, many Indiana cases which hold that "[t]he premature bringing of an action is proper ground for abatement, and if not so pleaded it must be deemed waived."[2] This appears also to be the modern view in most, if not all, American jurisdictions.

> "As a rule, an action cannot be maintained if it is commenced before the accrual of the cause of action which is sought to be enforced, and such premature commencement is a ground for the abatement of the action, even though the cause of action accrues before the trial. However, it has been held that *where no plea in abatement or other pleading is filed,* and the plaintiff files a supplemental pleading after the cause of action matures, *the right to abatement of the action is lost* and it may proceed as though it were timely commenced." (My emphasis.) 1 Am. Jur. 2d, Abatement, Survival and Revival, § 4, p. 44. (Footnotes omitted.)
>
> ". . . an action cannot be maintained if it is commenced before the accrual of the cause of action which is sought to be enforced. Such an action should be dismissed without

1. *McClellan* v. *Beatty* (1944), 115 Ind. App. 173, 53 N.E.2d 1013; *Swaynie* v. *Vess* (1883), 91 Ind. 584; *Wilson* v. *Jinks* (1917), 63 Ind. App. 615, 115 N.E. 67; *Welborn* v. *Kimmerling* (1909), 46 Ind. App. 98, 89 N.E. 517; *Jackson ex dem. Bartholomew* v. *Hughes* (1826), 1 Blackford 421; *Smeekens* v. *Bertrand* (1969), 144 Ind. App. 656, 248 N.E.2d 48, 51; *Reed* v. *Ward* (1875), 51 Ind. 215; *Bryant* v. *Barger* (1939), 106 Ind. App. 245, 18 N.E.2d 965; *Taylor* v. *Phelan* (1946), 117 Ind. App. 40, 69 N.E.2d 145; *Craig* v. *Bennett* (1897), 146 Ind. 574, 45 N.E. 792.

2. *Pittsburgh, Cincinnati, Chicago and St. Louis Railway Co.* v. *Schmuck* (1913), 181 Ind. 323, 329, 103 N.E. 325; *Gradeless* v. *Gradeless* (1943), 114 Ind. App. 10, 17, 49 N.E.2d 398, 400; *Moore* v. *Sargent* (1887), 112 Ind. 484, 487, 14 N.E. 466; *Scott* v. *Norris* (1892), 6 Ind. App. 102, 105, 32 N.E. 332; *Norris* v. *Scott* (1892), 6 Ind. App. 18, 20, 22, 32 N.E. 103, 865; *Glidden* v. *Henry* (1885), 104 Ind. 278, 282, 1 N.E. 369; 1 Gavit, IND., PL. & PRACT. 655, § 140. None of these cases is an ejectment or landlord versus tenant possession action.

prejudice to the plaintiff's right to begin a new action on the accrual of the cause of action, upon proper and timely objection being made. *The defense of prematureness has been held to be waived when no timely objection was made.* It has been held that where the cause of action has matured before the objection is made that the action was prematurely brought, the plaintiff may, upon payment of costs, proceed with the action by amendment, or, in the discretion of the court, file a supplemental petition." (My emphasis.) 1 Am. Jur. 2d, Actions, § 90, p. 619. (Footnotes omitted.)

Pleas in abatement and demurrers[3] have been abolished by Trial Rule 7(C), Indiana Rules of Procedure, but abatement and waiver have not. Trial Rule 8(C) requires all affirmative defenses to be specially pleaded and puts the burden of proving them on the party pleading them. It specifically categorizes "matter of abatement" as an affirmative defense. The clear implication of TR. 8(C)'s requirement is that a defendant waives the right to have the action abated, or dismissed without prejudice, if he fails to plead the reason for its abatement.[4]

---

3. It was held in Indiana that a complaint was demurrable for want of facts if the premature commencement of the action was apparent on its face. *The Walter A. Wood Mowing, etc. Co.* v. *Caldwell* (1876), 54 Ind. 270, 281, 23 Am. Rep. 641; *Norris* v. *Scott* (1892), 6 Ind. App. 18, 32 N.E. 103, 104; *Middaugh* v. *Wilson* (1902), 30 Ind. App. 112, 65 N.E. 555.

4. "As a result of the 1966 amendment of [Federal] Rule 12(h), the waiver provision no longer specifically applies to 'all defenses and objections.' However, this does not mean that the waiver philosophy of subdivision (h) is applicable only to the defenses and objections expressly described therein. It is evident from a reading of the text of Rule 8(c), Rule 8(d), and Rule 12(b) that all affirmative defenses and denials must be pleaded or, when appropriate, raised by motion under Rule 12(b), or they will be waived. For example, courts have held that the affirmative defenses of res judicata and statute of limitations have been waived by a failure to include them in the responsive pleading. Moreover, certain defenses or objections may be waived if they are not pleaded in the manner prescribed by a particular rule, for example, Rule 9. The Advisory Committee probably felt that an express statement covering these points in Rule 12(h) would be superfluous." (Footnotes omitted.) 5 Wright & Miller, FED. PRAC. AND PROC. 868, § 1394.

The possibility exists that prematurity appearing on the face of the complaint could be ground for dismissal on motion pursuant to TR. 12(B)(6). See the demurrer for want of facts cases cited in note 3. Since no motion to dismiss was filed there is no reason to express an opinion on that question, nor on the question of whether, after an answer of denial or admission and denial and prior to trial, a motion for summary judgment based on undisputed facts *de hors* the record showing prematurity will lie.

In this case there was no pre-trial conference and no pre-trial order defining the issues for trial. The defendant's only response to the complaint is an answer which purports to assert two defenses. This first defense states merely: "The Complaint fails to state a claim against Defendant on which relief can be granted." The second defense is an admission of specified parts and of specified allegations of the complaint and a denial of "the remaining allegations of rhetorical paragraph 2, . . . paragraph 3 . . . [and] paragraph 5." His motion for new trial characterizes his answer as denying, among other things, "[t]hat the plaintiffs are entitled to the possession of the real estate." Whatever the court, the plaintiffs, and the defendant may have understood the import of either of his defenses to be, neither of them was an affirmative averment of facts leading to the conclusion (or an averment of the conclusion) that plaintiffs should not be permitted to maintain this action (i.e., that it should be abated or dismissed without prejudice) because they commenced it before it accrued (i.e., before they became entitled to possession).

Having waived his defense in abatement by his failure to plead it as required by Trial Rule 8 (C), defendant cannot now be heard to complaint that plaintiffs were granted the relief to which the evidence most favorable to them showed them to be entitled at the time of the trial.

NOTE.—Reported at 332 N.E.2d 834.