SCOVILLE ET AL. *v.* HAWKINS ET AL.

[No. 19,043. Filed June 17, 1959.]

*Mellen & Mellen,* of Bedford, for appellants.

*H. Wayne Baker,* of Bedford, for appellees.

GONAS, C. J.—Appellees brought this action in 1954 to quiet title to certain real estate; to recover possession

of a three foot strip thereof together with damages for its unlawful detention; and to require appellants to remove certain structures from the three foot strip. Appellants filed their answer and also a counter-claim by which they sought to quiet title to the three foot strip in themselves. Trial to the court resulted in a finding and judgment in favor of appellees. Appellants assign here as error the overruling of their motion for a new trial.

It appears from the evidence that Arthur C. Root and Lena Root, his wife, conveyed by warranty deed to one Charles A. Wynn, in 1931, real estate in the city of Bedford which was 106⅔ feet in length north and south, and 77.3 feet in width east and west, on the north side of 22nd Street, described more fully as follows:

> Parts of Lots Eight (8) and Nine (9) in Block "F" in Maplewood Addition to the City of Bedford described as follows: Beginning at a point 36 feet East of the Southwest corner of said Lot Eight, running thence North One Hundred Six and two-thirds feet; running thence East seventy-seven and three-tenths feet; thence South One Hundred Six and two-thirds feet; thence West seventy-seven and three-tenths feet to the place of beginning.

In the same year, 1931, Wynn constructed two houses on the real estate, one on the east part thereof and one on the west part. He had water and sewer lines laid from the street on the south at a point about half way between the two houses. A mark was placed on the sidewalk indicating the location of these lines.

Wynn deeded the west half of this real estate to Samuel Sherwood and May Belle Sherwood, husband and wife, on September 5, 1931. This half was sold at sheriff's sale to Equitable Life Assurance Society of

the United States on October 12, 1935, and this insurance company deeded it to appellees on February 28, 1944.

The east half, which had not been conveyed by Wynn, was sold at sheriff's sale to the same insurance company on December 29, 1934, and this half was deeded to the appellants by the insurance company on February 10, 1944. The controversy here involves the east three feet of the land deeded to appellees, on which the appellants erected certain structures.

Appellants argue that the decision of the court is not sustained by sufficient evidence and is contrary to law because of "the well established rule of an agreed line and the rule of estoppel and the rule of adverse possession."

It is held that adjoining owners, uncertain of the true boundary line, may by parol agreement establish a boundary line, and the agreement is taken out of the statute of frauds if it is executed. 4 I. L. E. *Boundaries*, §31, p. 198. "In the absence of fraud, when adjoining landowners agree as to their boundaries and take possession and make improvements accordingly, each is estopped from ascertaining that such boundary is not the true one, even though possession is taken for less than the prescriptive period." 4 I. L. E. *Boundaries*, §32, p. 200; *Seaver* v. *Vonderahe* (1920), 74 Ind. App. 631, 127 N. E. 206.

There is no evidence of any agreement between any of the adjoining owners as to the boundary line prior to the conveyances to appellants and appellees in 1944. Both halves of the real estate were owned by the same insurance company on October 12, 1935, until they were deeded to the parties hereto in 1944.

There was evidence that there was a half-inch metal pipe at the north end of the real estate, about six or eight inches west of the wall hereinafter mentioned. Who placed this pipe there is not disclosed by the evidence, and the evidence does not compel any conclusion as to just when it was placed there. There was also a mark on the sidewalk on the south side of this real estate which indicated where the utility lines between the two houses were located. It appears that appellants placed reliance upon a line which would extend from the pipe to the mark on the sidewalk which indicated the location of the utility lines. That this line is west of the boundary line between the east and west halves of the real estate is not disputed, nor is it disputed that appellees have record title to the west half. Record title is the highest evidence of ownership and is not easily defeated. *Milhon* v. *Brown* (1957), 127 Ind. App. 694, 143 N. E. 2d 573; *Norling* v. *Bailey* (1951), 121 Ind. App. 457, 98 N. E. 2d 513.

Appellants, in the fall of 1944, built the stairway on the west side of their dwelling, and the wall from the stairway to the front sidewall in 1945. Appellees knew of this construction and made no objection, as they didn't know where their line was.

In September, 1948, appellants constructed a concrete block wall running north and south. The stairway, walk and wall all extend onto the west half of the real estate involved here, and which had been deeded to appellees.

In this case appellants rely upon an alleged agreement in approximately September of 1948. It appears that appellant Harold Scoville and appellee Hobart Hawkins had a conversation on the property in question after excavation had been made pre-

paratory to constructing the wall. Hawkins asked Scoville how he knew he was on the property line, and was informed that a stake had been excavated out of the ground at one point and that an engineer had told him to run exactly between the two houses. Hawkins asked Scoville how he knew he was running straight, as he had no line up or measurement of any kind, and told Scoville one way would be to get a chalk line up. The evidence as to what was said and what happened on this occasion is in conflict, and this court must accept the evidence and inferences therefrom most favorable to the decision of the trial court. After an examination of the record of the evidence on this subject, we can find nothing in the evidence and inferences that might be drawn therefrom, more favorable to the appellees, which would compel the conclusion that an agreement as to the location of the boundary line was entered into at that time. We note that appellant Harold Scoville was informed by another witness during the course of the construction of the wall that he was constructing it on the Hawkins land.

In November, 1948 appellee Hobart Hawkins told appellant Harold Scoville that he was informed that appellants' structures were over on his property, but that he would give him time to move the stairway and wall. In the fall of 1951, Hawkins asked Scoville if he didn't think he had waited long enough. In November, 1952 the county surveyor surveyed the land and placed a stake and mark on the line between the east and west halves. In May, 1953 Hawkins informed Scoville, who was repairing the stairway, that he would have to move it or appellee would sue, at which time there was a discussion of the possibility of closing an alley on the west side of appellees' property, and the deeding of the three foot strip by appellees to appel-

lants, but no action resulted in this regard. Again, according to the record, appellee Hobart Hawkins testified that in September or October, 1954 appellant Harold Scoville was told by Hawkins to get his structures off appellees' land or suit would result. It thus appears that during a part of the time the encroachment by appellants was permissive.

Appellants cite authorities concerning the acquiescence in a boundary line for 20 years and adverse possession of the land of another for twenty years, without applying such authorities to the facts of this case, and no application is apparent to us. Certainly there was no adverse possession or any evidence of acquiescence in a boundary line during the years 1935 to 1944 when the insurance company owned both halves of this tract of real estate.

Appellants also argue that on the motion for new trial the court should have opened the judgment, taken additional testimony and directed the entry of a new judgment. No authorities are cited in support of their argument, as required by Rule 2-17 (e), and appellants' contention of error in this regard is waived. Flanagan, Wiltrout and Hamilton, *Indiana Trial and Appellate Practice*, §2677, Comment 11; 2 I. L. E. *Appeals*, §387, p. 262.

No error being shown, the judgment of the trial court is affirmed.

Bierly, Kelley and Smith, JJ., concur.

NOTE.—Reported in 159 N. E. 2d 307.