RICHARD A. LACY ET UX. *v.* HOWARD WHITE ET UX.

[No. 1-672A18.  Filed October 19, 1972.]

*James R. White, R. Clark Allen,* of New Castle, for appellants.

*Robert A. Harvey, Millikan, Hodson & Harvey,* of New Castle, *George W. Hand, Scotten & Hinshaw,* of New Castle, for appellees.

LOWDERMILK, J.—The complaint in this cause of action was filed July 8, 1971. Although the present Indiana Rules of Court were adopted and in effect at that time, the pleadings were all filed under the preceding Rules of the Supreme Court.

The complaint was for ejectment and cancellation of contract to which was filed an answer in three Paragraphs, the first of which was denial, admission and no information and the second and third of which were affirmative and in the nature of a counterclaim, with the third Paragraph praying judgment against the plaintiffs-appellees in the amount of $10,000 and for damages.

Trial was by the court without the intervention of a jury and after which the court, having had the case under advisement, entered its judgment that the conditional sales contract entered into between the parties be terminated and cancelled; that the plaintiffs-appellees are entitled to immediate possession of the real estate in question and are awarded $2,050 for damages for installments due and unpaid.

The court further decreed that the defendants-appellants take nothing by their cross complaint.

The facts are that defendants-appellants were in the market for a contractor to build them a new home. They went to the plaintiff-appellee, Howard White, who is by occupation a builder of homes around New Castle, Indiana, and a developer

of an area known as "White Estates" which is near New Castle. Mr. White built and developed 92 homes and 22 apartments in the development.

Appellant Lacy testified that he asked Mr. White about building a new home for them. Mr. White said that he had a home he would like for the Lacys to see and was told by the Lacys they were not interested, and they wanted to build a home according to their blueprints, but upon the insistence of appellee White they looked at a new home which they subsequently purchased.

Defendants-appellants agreed to take this particular home at a cost to them of $31,000. They paid $5,000 down and were allowed a $600 credit, making a total down payment of $5,600.

The parties agreed that the Lacys would pay $150 per month from June 1, 1968, until June 1, 1969, as follows:

"4. (b) (1) The buyers agree to pay the sum of One Hundred Fifty Dollars ($150.00) each month to the Sellers for a period of one (1) year commencing June 1, 1968, and like payments shall be due on the same day of each succeeding month thereafter until twelve (12) payments shall have been made."

They agreed further as follows:

"4. (b) (2) At the end of said one (1) year period the Sellers and the Buyers agree to make a satisfactory arrangement concerning the payment of the then unpaid balance of the purchase price."

Thereafter, the contract was reduced to writing by defendant-appellants' attorney and executed by all the parties before a Notary Public as of May 1, 1968, and executed on June 7, 1968. No provision was made in the contract for the payment of interest on the unpaid balance due thereon.

At the end of the year no new written agreement was entered into but defendants-appellants retained possession of the premises and paid $150 per month plus the taxes on the

property for an additional period of twelve months, after which they discontinued making payments.

The defendants-appellants' third affirmative Paragraph of answer, designated as a counterclaim, alleged that prior to the sale the appellee, Howard White, made an oral agreement with defendants-appellants that he would personally see that any later discovered defects in the house would be corrected by him and that said agreement was made to induce the defendants-appellants to purchase said real estate.

The law is so well settled that it needs no citation of authority that oral representations made by the parties prior to the execution of the real estate contract are merged into the written contract. Therefore, the parties are bound by the terms of the written contract and it was the trial court's duty in passing upon the evidence to construe the contract and not to consider any parol evidence leading to the execution of it.

The third affirmative Paragraph of answer further alleges twelve defects in the home; that frequent requests were made by defendants-appellants upon the appellee, Howard White, to correct various and numerous defects in the home and that he refused to abide by his agreement with defendants-appellants.

Defendants-appellants' evidence was that the house became very hot in the summer and in winter, when the outside temperature was as low as 18° they could not get them temperature inside the home above 60°, with a thermostat in each room set at 90° and the fireplace on and the oven on, with the oven door open. The evidence was, further, that in an attempt to live in the house and stay warm the defendants-appellants and their two children brought mattresses down in front of the fireplace in cold weather and on at least one occasion they had to leave home and stay with friends in order to have enough heat to be comfortable. Plaintiff-appellee, White, testified that a complaint was made that defendants-appellants could not get heat above 60° and Mr. White took a ther-

mometer to the home where he set it on a table and it went up to 70° in a short time.

When the wind blew, draperies inside the house blew out from the wall; a person inside the house could feel outside air blow through the electrical switches in the walls; the inter-com system inside the house became covered with frost; pipes inside the house froze in cold weather and the purchasers had to carry their own water from outside. Fixtures in the bathroom froze up and burst and were replaced by new fixtures purchased by the Lacys.

There is disputed evidence as to the insulation, one side saying the house was properly insulated and the other stating that the insulation was stacked in piles and not uniform. Defendants-appellants' exhibits show the insulation under the floor came loose and plumbing under the house had not been wrapped with insulation. White contends the insulation was adequate, while Lacy introduced evidence showing that the insulation was inadequate.

A bathroom heater was replaced but never put in the ceramic tile in the wall, but left hanging loose. Lacy testified the house got so cold you could not stand barefoot in the kitchen in the winter and that wash cloths froze when left on the tub overnight.

The evidence was that the footings were poured in water in the trench in cold weather and that the location of the house was in swampy land.

A photograph of the house, including other houses, shows that there is snow on the roofs of other houses, but on the residence portion of defendants-appellants' home there is no snow; however there is snow on the roof of their unheated garage.

Plaintiff-appellee, White, contends that he made some repairs. This was admitted by defendants-appellants, but they further contend the repairs were not correctly made.

From the exhibits in the record we conclude that the trial

judge could find that they corroborated the evidence of the defendants-appellants, as alleged in their third Paragraph of answer.

Lacy alleged many other defects in the house, some of which were repaired by White, and some that were not called to White's attention. These alleged defects supplement the defendants' contention that the house was poorly constructed, but do not materially strengthen the argument of habitability as raised by the appellants. Certainly, there was a conflict in the evidence as to the faulty construction of the house.

Defendants-appellants timely filed their motion to correct errors, for the following reasons:

(1) The decision of the court awarding judgment in the amount of $2,050 for installments due and unpaid is contrary to law and is contrary to the evidence;

(2) The decision of the court that the defendants take nothing from their cross-complaint is contrary to law and contrary to the evidence.

The memorandum filed with the motion to correct errors is omitted from this opinion. However, at the close of the memorandum defendants-appellants requested:

"1. That the judgment be corrected as to the awarding of damages to plaintiffs and that plaintiffs be awarded no such damages.

"2. That the judgment be corrected to award the defendants damages as requested in their cross-complaint and in an amount that reflects payments made by them under the contract, i.e., $9200.00.

"3. That defendants be granted a new trial."

Specification 4, subparagraph (b)(2) of the contract provided that at the end of the first year period the parties to the contract were to make a satisfactory arrangement for the then unpaid balance of the purchase price.

The evidence was without dispute that the purchasers, defendants-appellants, paid the monthly payments for the first

twelve months as agreed. The evidence is, further, that at the close of twelve months the parties hereto either failed or refused to expressly make satisfactory arrangements concerning the payments of the then unpaid balance of the purchase price. However, defendants-appellants continued to pay $150 per month plus taxes on the property for an additional period of twelve months, or a total of twenty-four payments. During this period of time purchasers continued to reside in the house and to make more demands for repairs. After this, they discontinued making payments and this suit was filed July 8, 1971.

It is defendants-appellants' contention that a dispute arose prior to the expiration of the one year on two matters, namely: (a) whether the $150 monthly payments that had been paid were to be credited to principal or to interest and (2) whether or not the sellers, plaintiffs-appellees, were going to take care of the heating problem and other defects in the home.

Defendants-appellants further contend that there was no "satisfactory arrangement" between the parties in compliance with the terms and conditions of the written contract as to further negotiation of payment and the court erred in finding the $150 monthly installment payment were due from the buyers to the sellers until such time as there was a "meeting of the minds." Their further contention is that the court substituted a condition in the contract that was not present or intended by the parties when they entered into the contract.

They further contend that there was no evidence presented as to the reasonable rental value of this particular property nor was any such damages acclaimed or assessed by the court and that the sole and only basis of awarding damages to the plaintiffs-appellees was as "installments due and unpaid."

We cannot escape the determination that this contract of the parties is ambiguous and must, therefore, be construed by the court under the law establishing the method of construction of ambiguous contracts as determined by the law of the State of Indiana.

Although we have not set out the contract in its entirety the construction of the contract is not limited to the specifications thereof copied in this opinion, but our construction has been made from the contract in its entirety. *McClain's Estate* v. *McClain* (1962), 133 Ind. App. 645, 654, 183 N. E. 2d 842.

At no place in the pleadings do we find any mention of a return of the down payment. The third Paragraph of answer, designated counterclaim, does pray for a judgment of $10,000 and all other proper relief and we are of the opinion it might be inferred that the sum included the down payment of $5,600.

However, the court found against appellants on the second and third Paragraphs of answer, where they had the burden of proof, and, therefore, they are complaining about a negative judgment, which presents no questions.[1]

In answer to defendants-appellants' charges of error in the memorandum filed with their motion to correct errors, the appellees failed to favor this court with citations of authority supporting appellees' proposition.

In the case of *Illinois Pipe Line Co.* v. *Brosius* (1939), 106 Ind. App. 390, 393, 20 N. E. 2d 195, this court discussed and quoted the well established rules adopted and followed by the courts in the interpretation and construction of contracts, and said:

> "The rules that a contract will be construed strictly against the party preparing it and that the court will not make the contract for the parties are so well established that they are no longer questioned.
>
> "The construction of a written instrument to be adopted is the one which appears to be in accord with justice and common sense and the probable intention of the parties in the light of honesty and fair dealing and to accomplish the end and serve the purpose intended by the parties.
>
> "The intent of the parties at the time the contract was entered into is the controlling factor in determining what

---

1. For our reasons, see this opinion as to the second specification of the motion to correct errors as the same pertains to legal Paragraphs II and III of the defendants-appellants' affirmative answer and counterclaim.

the agreement of the parties actually was. [Citing cases.]" *Noblesville Milling Co.* v. *Johnson* (1946), 116 Ind. App. 437, 65 N. E. 2d 250; *Fineberg* v. *Clark* (1965), 137 Ind. App. 528, 209 N. E. 2d 528. 6 I. L. E. § 113, Intention of Parties.

It is therefore, our duty under the law to strictly construe the contract against the defendants-appellants, as it was their attorney who drafted the contract.

The contract made no provision for the payment of any interest on the unpaid balance of $25,400 owed to the appellees. The record is silent that any interest was ever paid to them; however, the defendants-appellants paid the taxes on the property during the time in which they paid monthly payments.

In the case of *Reissner, et al.* v. *Oxley, et al.* (1881), 80 Ind. 580, the court, at page 584, said:

"The right of parties to put an interpretation upon their own contracts, even to the extent of doing away, practically, with the ordinary and plain meaning of terms, cannot well be denied, so long as their interpretation does not result in a contract which for some reason is in itself unlawful. And the cases are numerous and consistent, which permit a resort to proof of the circumstances or situation of the parties, when their contract was made, and of their transactions under it, when its terms are of doubtful or ambiguous meaning, for the purpose of arriving at the true intention, and, when this is done, the question must be left to the decision of the jury substantially as was done in this instance." *Johnson Oil Refining Co.* v. *Indian Refining Co.* (1931), 94 Ind. App. 416, 424, 179 N. E. 179.

In the case of *Ketcham et al.* v. *The Brazil Block Coal Co.* (1883), 88 Ind. 515, at page 529, the court said:

". . . but where there is uncertainty, obscurity or ambiguity in the language, then the acts of the parties in connection therewith furnish valuable aid in the construction of it. *Morris* v. *Thomas,* 57 Ind. 316, 322; *Heath* v. *West,* 68 Ind. 548. Evidence of the mutual acts of the parties to the contracts in reference to the fulfil-

ment of it, after it was entered into, is admissible to show what their intention and understanding was in the use of language otherwise somewhat obscure. *Bates* v. *Dehaven,* 10 Ind. 319; *Reissner* v. *Oxley,* 80 Ind. 580."

The court, in the case of *Heath* v. *West* (1879), 68 Ind. 548, 556, in discussing construction of an ambiguous contract, states:

"In construing an uncertain or ambiguous provision of a contract, each party must be held to the construction which his own conduct has placed upon it, where such conduct inevitably operates as an admission against his interests; ..."

See, also, *Bollman* v. *Indianapolis Machinery Co.* (1971), 150 Ind. App. 465, 276 N. E. 2d 606, 611; *Wysor* v. *Lake Erie & W. R. Co.* (1895), 143 Ind. 6, 42 N. E. 353.

Under the evidence before us and under the law heretofore set out it is our duty to construe the contract in question most favorable to the plaintiffs-appellees; each of the parties must be held by the construction which each of them has placed on it by his own conduct.

It appears to this court from the conduct of defendants-appellants when they continued to pay the monthly installments agreed upon for one year after the termination of the term set forth in specification 4(b)(1) that they fully intended to be bound by the contract, make the payments of $150 per month, pay the taxes, continue to reside in the home and continue to insist on the appellees' making further repairs of the alleged defects in the dwelling.

It further appears to this court from the conduct of the appellees in accepting the monthly payments at the original figure agreed upon and permitting the defendants-appellants to pay the taxes and making no demands for and receiving no interest on the unpaid balance of $25,400 and permitting the defendants-appellants to retain possession that the appellees intended to continue and be bound by the original contract

for the continuation of the monthly payments at $150 each, plus taxes.

Inasmuch as neither of the parties asked for special findings of fact and conclusions of law and none was handed down by the trial court; and inasmuch as there was evidence to sustain the allegations of plaintiffs-appellees' complaint awarding damages to them and inasmuch as we are not permitted to weigh the evidence, we must necessarily determine that the court did not err in returning its finding and judgment in favor of the plaintiffs-appellees.

However, we cannot reconcile the sum of $2,050 damages, but under the evidence there being installments due and payable at the rate of $150 per month, we calculate the damages to be $1,990 considering the following evidence and record in this cause. Installments were paid to May 1, 1970, which would leave the next payment due on June 1, 1970. The suit was filed, according to the transcript, on July 8, 1971, and for which the court found the defendants-appellants were obligated to pay. The calculation of 13 months and 8 days at $150 per month would be $1,990.

Each of the parties discussed the rule of *caveat emptor* as it applied to the purchase of a new home under the court's opinion, written by Judge Sharp, in *Theis* v. *Heuer* (1971), 149 Ind. App. 52, 270 N. E. 2d 764, and later adopted in its entirety by our Supreme Court and reported at (1972), 280 N. E. 2d 300. *Theis, supra,* holds that the rule of *caveat emptor* has been abolished as the same previously pertained to the purchase of a new dwelling from the builder thereof. We are familiar with the rule as laid out in the *Theis* case, but inasmuch as the trial judge heard the evidence, personally went to the premises and observed the condition of the dwelling as to construction and alleged defects; and inasmuch as there was a conflict in the evidence as to defects and the trial judge found that the defects were susceptible of remedy, we are bound by his finding and judg-

ment on the defendants-appellants' cross complaint. It is strictly within the province of the trial court to weigh the evidence. This he did; there was a conflict in the evidence, and when there is a conflict in the evidence we are not at liberty to weigh the same.

"It is only where the evidence is without conflict and can lead to but one conclusion, and the trial court has reached an opposite conclusion, that the decision of the trial court will be set aside on the ground that it is contrary to law." *Pokraka* v. *Lummus Co.* (1952), 230 Ind. 523, 104 N. E. 2d 669; *Senst* v. *Bradley* (1971), 150 Ind. App. 113, 275 N. E. 2d 573; *Hinds* v. *McNair* (1955), 235 Ind. 34, 129 N. E. 2d 553.

Applying the rule laid down in *Pokraka, supra,* to the evidence in the case at bar we are constrained to hold that the decision was not contrary to law.

Further, legal Paragraphs II and III are affirmative answers and counterclaims. This being the fact, the defendants-appellants had the burden of proof. The judgment of the court being against them on said counterclaim is a negative judgment thereon. The law is well settled that the decision and judgment of the trial court, being negative in character, presents no question. *Hardy* v. *Town of New Harmony* (1967), 248 Ind. 350, 227 N. E. 2d 689; *Hinds* v. *McNair, supra.*

Finding no error in the record, the judgment of the trial court is hereby affirmed and this cause is remanded to the trial court and the judge thereof is ordered to modify his judgment entry heretofore made allowing $2,050 judgment for installments due and unpaid to the sum of $1,990, pursuant to Rule AP. 15 (M).

Robertson, P.J., and Lybrook, J., concur.

NOTE.—Reported in 288 N. E. 2d 178.