Edward Eugene **FREIBURGER** and Elaine Freiburger, Appellants (Defendants Below),

v.

Verly **FRY** and Clesta Fry, Appellees (Plaintiffs Below).

No. 3–282A19.

Court of Appeals of Indiana, Third District.

Aug. 19, 1982.

Ronald J. Tirpak, Schenkel & Tirpak, Fort Wayne, for appellants.

William M. Bloom, Julia E. Hurley, Bloom, Bloom & Fleck, P. C., Columbia City, for appellees.

HOFFMAN, Presiding Judge.

This appeal arises from a property dispute between Mr. and Mrs. Fry, plaintiffs below, and Mr. and Mrs. Freiburger, defendants below, which went to trial on April 20, 1981. The Frys brought suit to quiet title in a small triangular strip of land dividing the north end of their property from the south end of Freiburgers' land.

The trial court held for the Frys on the theories of adverse possession and possession by estoppel. In a counterclaim the Freiburgers asserted riparian and littoral rights in Dollar Lake located predominantly on the Frys' land but which extended onto the Freiburgers' land because the level of the lake had risen. The court held that Dollar Lake was a private lake and the Freiburgers had no riparian or littoral rights in said lake. The Freiburgers were also enjoined from traveling on, or draining water from, Dollar Lake. Damages in the amount of $1,949 were awarded to the Frys for slander of title.

The facts taken in a light most favorable to the findings of the trial court are recited below:

In September of 1945, the Frys received a warranty deed which granted them title to a specific area of land located in the southeast corner of the north ½ of the southwest ¼ of Section 25, Township 33 north, Range 8 east in Whitley County, Indiana. Sometime between 1953 and 1955 the Frys and the owner of the adjoining property, Mr. Beers, agreed to erect a partition fence. Mr. Beers constructed the fence along the west side of the Frys' property, and the Frys constructed a fence along the north end of their property. The northern fence was built along an existing fence line except for the fact that the northwest corner was moved from a tree to a post thirty feet south of its original location to the site of a surveyor's stake. The fence was treated as the legal boundary line of the Frys' property, and Mr. Beers never contested the Frys' ownership of any land within that boundary.

A house and cottage were built on the land owned by the Frys. The land area in dispute near the fence was used and maintained by the Frys to the extent possible for as long as the Frys held the land.

At the time the Frys purchased the land, Dollar Lake was located wholly within the boundaries of their property. This lake had always been considered, and continued to be treated by the Frys as a private lake exclusively within the dominion and control of its

surrounding landowners. After the Frys purchased the land, a county drainage ditch became clogged and the level of the lake rose so that it extended north of the Frys' land onto the property subsequently purchased by the Freiburgers.

On or about October 23, 1979 the Freiburgers purchased a tract of land adjoining the northern boundary of the Frys' land. Before purchasing the property the Freiburgers inspected the land, saw the fence, and noticed the area of the lake on their side of the fence. Both before purchasing and several times after purchasing the land, Mr. Freiburger requested that the Frys remove the fence. This request was refused each time. The Freiburgers then cut the fence dividing their property from the Frys' property and excavated a ditch to drain water from the lake.

At trial the Frys contended that they had acquired possession in the disputed area of land through adverse possession, or in the alternative, through a boundary line agreement. The Frys also asserted that the Freiburgers had no riparian or littoral rights in Dollar Lake. The court agreed and awarded the Frys damages.

On appeal the Freiburgers raise several issues which have been restated as follows:

(1) whether the trial court's determination that the Freiburgers are estopped from denying the Frys' ownership of the disputed area of land by reason of an agreed boundary line is contrary to the evidence and contrary to law;

(2) whether the trial court's determination that the Frys had acquired ownership of the disputed area of land through adverse possession is contrary to the evidence and contrary to law;

(3) whether the trial court's determination that the Freiburgers have no riparian or littoral rights in Dollar Lake is contrary to the evidence and contrary to law; and

(4) whether the trial court's award of damages to the Frys for slander of title is supported by sufficient evi-

dence or contrary to the evidence and law.

The Freiburgers allege that the trial court's decision that they were estopped from denying the Frys' ownership of the disputed area of land by reason of a boundary line agreement is contrary to the evidence and contrary to law. When determining whether a trial court's finding is contrary to the evidence, this Court's scope of review is limited. This Court is not free to reweigh the evidence and rejudge the credibility of the witnesses and will reverse a trial court's determination only where uncontradicted evidence leads to a conclusion opposite that reached by the trial court. *Lamb et al. v. Conder et al.* (1975), 166 Ind.App. 293, 335 N.E.2d 625; *Lacy et ux. v. White et ux.* (1972), 153 Ind.App. 504, 288 N.E.2d 178.

In the case at bar the evidence clearly indicates that the Frys and the Freiburgers' predecessor in interest agreed to erect a partition fence and treated that fence as a legal boundary line. When adjoining landowners agree to erect a fence and treat that as a legal boundary, they are estopped from denying that this is the legal boundary line. *Adams v. Betz* (1906), 167 Ind. 161, 78 N.E. 649; *Welborn v. Kimmerling* (1909), 46 Ind. App. 98, 89 N.E. 517.

This line agreement is not only binding on those parties who agree but also their successors in interest so long as there was no fraud present in the making of the agreement. *Myers et ux. v. McGowen et ux.* (1965), 138 Ind.App. 163, 212 N.E.2d 411; *Bubacz v. Kirk* (1930), 91 Ind.App. 479, 171 N.E. 492; *Furst v. Satterfield* (1909), 44 Ind.App. 613, 89 N.E. 906. The line agreement need not be express and may be inferred from the parties' actions, but there must be evidence of some agreement as to the boundary line. *Myers v. McGowen, supra; Scoville et al. v. Hawkins et al.* (1959), 129 Ind.App. 607, 159 N.E.2d 307. Use and improvement of the land up to the alleged boundary line may be sufficient to satisfy the requirement of an agreement if the adjoining landowner acquiesces. Owner-

ship of the land in this manner vests in the parties even though the property has not been held for the statutory period required under a theory of adverse possession. *Stalcup v. Lingle* (1921), 76 Ind.App. 242, 131 N.E. 852.

■ The evidence clearly indicates that the Frys and the Freiburgers' predecessor in interest, Mr. Beers, agreed to erect a partition fence between their adjoining lands. When the fence was erected in 1953 or 1955 it was built along an existing fence line except for moving one corner post south thirty feet to a surveyor's stake evincing the parties' belief that this would be the true property line. Since the time that the fence was built the Frys have used all of the disputed area of land to the extent possible, and Mr. Beers has never contested the Frys' ownership of this property. Therefore, we find the trial court's determination that the Freiburgers are estopped from denying the Frys' ownership of the disputed area of land is not contrary to the evidence nor contrary to law.

It is unnecessary to discuss the second issue raised by the Freiburgers regarding the Frys' claim of adverse possession in light of the answer to the first issue raised by the Freiburgers.

■ The Freiburgers also allege that the trial court's finding that they have no riparian or littoral rights in Dollar Lake is contrary to the evidence and contrary to law. Any dispute as to operative facts in a lawsuit is left for the fact-finder to determine and the fact-finder is free to believe or disbelieve any witness in its effort to perform this duty. *State ex rel. Peters v. Bedwell (Sullivan C.C.)* (1978), 267 Ind. 522, 371 N.E.2d 709. As stated above this Court's scope of review is limited. *Lamb et al. v. Conder et al., supra*, 166 Ind.App. 293, 335 N.E.2d 625.

■ In the case at bar the court determined that Dollar Lake was a private lake exclusively within the dominion and control of the Frys and held that the Freiburgers have no riparian or littoral rights in said lake. A private lake is a body of water on the surface of land within the exclusive dominion and control of the surrounding landowners. 1915–1916 OP.Ind.Att'y Gen. 703; *Patton Park, Inc. v. Pollak* (1944), 115 Ind.App. 32, 55 N.E.2d 328.

■ The record leads uncontrovertibly to the conclusion that Dollar Lake is and always has been treated as a private lake. The Frys, at the time they bought their land, owned all the land surrounding Dollar Lake and have continuously exerted control over the lake as a private body of water for almost forty years. When the Freiburgers purchased their land they had notice of the fact that the Frys treated Dollar Lake as a private lake. The trial court's determination that the Freiburgers have no riparian or littoral rights in Dollar Lake is therefore not contrary to the evidence nor contrary to law. The court's order enjoining the Freiburgers from draining water from the lake is consistent with that finding.

■ The last issue raised by the Freiburgers involves the court's award of damages to the Frys for slander of title. The Freiburgers allege that this award is not supported by sufficient evidence and is contrary to the evidence and law. Use of the terms contrary to the evidence and law is confined to appeals concerned with review of a negative judgment resulting when the appealing party was the complainant below, had the burden of proof, and was found against by the trial court. In this instance the damage award is based on the claim brought by the Frys not the Freiburgers; hence, negative judgment review is not appropriate, and we will discuss only whether the evidence is sufficient to support the findings of the trial court. *Lacy et ux. v. White et ux., supra*, 153 Ind.App. 504, 288 N.E.2d 178.

■ To prove slander of title the plaintiff has the burden of proving that the defendant made certain statements regarding the plaintiff's ownership of the land in question, that the statements were untrue, uttered with malice, and caused the plaintiff pecuniary loss. *Harper v. Goodin* (1980), Ind.App., 409 N.E.2d 1129. The

bone of contention in this case is whether the defendant uttered statements with malice. Malice has been defined as statements made *knowingly* or with *reckless disregard* for their falsity. *New York Times v. Sullivan* (1964) 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686.

In the case at bar the Freiburgers admit making statements that they, rather than the Frys, owned the disputed area of land. Before the Freiburgers bought the land they asked the Frys to remove the fence in question. This request was denied and put the Freiburgers on notice to discover the true ownership of the disputed area of land. However, without discovering who truly owned the land, the Freiburgers made statements clearly in reckless disregard for the truth thereof. These statements caused the Frys pecuniary loss in the form of attorney fees for this action to quiet title. There is sufficient evidence to support the trial court's determination that the Freiburgers slandered the title to property held by the Frys. *May v. Anderson* (1896), 14 Ind.App. 251, 42 N.E. 946. As to the Freiburgers' challenge of the damage award, when reviewing a court's award of damages such award will not be overturned unless grossly excessive. *Erdman v. White* (1980), Ind.App., 411 N.E.2d 653. Here the Frys introduced evidence that the pecuniary loss in the form of attorney fees for this action to quiet title amounted to $1,949. The trial court refused to award punitive damages. Clearly the trial court's award of damages is not grossly excessive.

For the reasons stated above all findings of the trial court are affirmed.

Affirmed.

GARRARD, J., concurs.

STATON, J., dissents with opinion.

STATON, Judge, dissenting.

I respectfully dissent from the majority's determination that Frys established slander of title. Freiburgers' statements claiming ownership of the disputed area cannot be considered malicious. The disputed area

Freiburgers claimed was within the boundaries of the land conveyed to them by a recorded warranty deed. In contrast, Frys' claim to the disputed area was not based on any written instrument, but rather on the theory of boundary line estoppel. Neither Freiburgers nor their immediate successor in title had been a party to this agreed boundary line. Based on these circumstances, Freiburgers had reasonable grounds to believe they had a legal claim to the disputed area.

Any titleholder of record ought to be able to dispute another's claim without risking liability for slander of title. This includes, without limitation, actions involving adverse possession, implied easements, and prescriptive easements. As to the latter, a titleholder has a statutory procedure whereby he may give notice to dispute the prescriptive user's right over the titled land, such notice being deemed an interruption of such use. IC 32–5–1–(1–4) (Burns Code Ed., 1980 Repl.). Consistent with this statute is the notion that a dispute of an adverse claim is often required to negate any purported acquiescence to the claim or admission of its validity. Freiburgers' color of title should therefore indicate that their claim to the disputed area was made in good faith.