**Coy L. CAPPS and Margaret M. Capps, Appellants–Defendants,**

v.

**Jeffrey A. ABBOTT and Teresa J. Abbott, Appellees–Plaintiffs.**

No. 52A02–0804–CV–388.

Court of Appeals of Indiana.

Dec. 16, 2008.

Jeffry G. Price, Peru, IN, Attorney for Appellants.

Jeffrey M. Miller, Noel Law, Kokomo, IN, Attorney for Appellees.

## OPINION

BRADFORD, Judge.

Appellants–Defendants Coy L. Capps and Margaret M. Capps ("the Cappses") appeal from the trial court's order awarding Appellees–Plaintiffs Jeffrey A. Abbott and Teresa J. Abbott ("the Abbotts") a small parcel of land by means of adverse possession and a prescriptive easement across the Cappses' property. We affirm.

## FACTS AND PROCEDURAL HISTORY

The Abbotts and the Cappses own adjoining parcels of real estate in the town of Santa Fe. The Abbotts acquired their property on August 1, 1989, and the Cappses acquired their property on September 19, 1989. The Abbotts' property is immediately south of the Cappses' property, and the two properties are divided by a farm fence. The Abbotts' property, part of which is used for farming, adjoins State Road 19, but the only route for ingress to and egress from the property is by means of a drive, which is referred to as Walnut Street. Walnut Street measures thirty (30) feet in width, although the paved portion measures approximately twelve (12) feet in width.

The Abbotts, their predecessors-in-title, and their invitees have continuously used Walnut Street for ingress to and egress from their property since at least the early 1970s. The Abbotts believe that their access to their property is via Walnut Street. The Cappses believe, and have believed

since buying their property, th at they own Walnut Street.

In 1990, Jeffrey Abbott and Coy Capps agreed that Abbott would erect a farm fence upon their properties' shared boundary line, as it was described in a 1990 survey conducted by Thomas Newport. The Abbotts planted bushes and trees on their side of the fence and have been in exclusive control of the property since 1990.

In 2006, the Cappses hired Newport to perform a survey of their land. Newport's 2006 survey contained inconsistencies with his 1990 survey. Newport's 2006 survey showed that a 0.021 acre tract south of the farm fence belonged to the Cappses. The 2006 survey also showed that Walnut Street had never been platted or turned over to the county, and thus was strictly a private access road. As a result of Newport's survey, the Cappses requested that the Abbotts no longer access their land by means of Walnut Street.

On May 23, 2007, the Abbotts filed a complaint to quiet title to the 0.021 acre tract and seeking the right to continue to use Walnut Street to access their property. On April 19, 2008, the trial court entered an order granting the Abbotts their requested relief. This appeal follows.

## DISCUSSION AND DECISION

Pursuant to the Cappses' request, the trial court issued specific findings of fact and conclusions thereon.

When a party has requested specific findings of fact and conclusions thereon pursuant to Ind. Trial Rule 52(A), the reviewing court may affirm the judgment on any legal theory supported by the findings. In addition, before affirming on a legal theory supported by the findings but not espoused by the trial court, the appellate court should be confident that its affirmance is consistent with all of the trial court's findings of fact and the inferences drawn from the findings. In reviewing the judgment, we must first determine whether the evidence supports the findings and second, whether the findings support the judgment. The judgment will be reversed only when clearly erroneous. Findings of fact are clearly erroneous when the record lacks any evidence or reasonable inferences from the evidence to support them. To determine whether the findings or judgment are clearly erroneous, we consider only the evidence favorable to the judgment and all reasonable inferences flowing therefrom, and we will not reweigh the evidence or assess witness credibility.

*Butler v. Shipshewana Auction, Inc.*, 697 N.E.2d 1285, 1287 (Ind.Ct.App.1998) (citations omitted).

### A. Challenged Findings

Initially, we note that the Cappses incorrectly contend that the trial court omitted factual findings relating to the public or private nature of Walnut Street, the Abbotts' beliefs regarding the nature of Walnut Street, and the width of the drive. In Findings Numbers 23 and 28, the trial court considered the evidence presented at trial and found that Walnut Street was a private drive. The trial court also found that the Abbotts believed they were entitled to use Walnut Street for ingress to and egress from their property, and that the Cappses believed that they owned Walnut Street. Additionally, the trial court's findings show that the trial court determined that the width of Walnut Street was thirty (30) feet and noted that many counties require that access roads be at least twenty-five (25) feet in width. Moreover, to the extent that the Cappses contend that some of the trial court's findings were erroneous, we note that these

allegedly erroneous findings **will** be discussed below, insofar as they are relevant to the adjudication of the Cappses' appeal.

## B. Title to 0.021 Acre Parcel

█ The Cappses assert that the evidence was insufficient to support the trial court's finding that the Abbotts had acquired ownership of the disputed 0.021 acres immediately south of the fence erected by the Abbotts in accordance with the 1990 Newport survey. Again, we note that when a party has requested specific findings of fact and conclusions thereon pursuant to Ind. Trial Rule 52(A), we may affirm the judgment on any legal theory supported by the findings. *See Butler,* 697 N.E.2d at 1287.

Here, the trial court considered two separate legal grounds supporting its determination that the Abbotts had acquired ownership of the 0.021 tract of land, specifically the theory of adverse possession and the theory of estoppel. With regard to estoppel, the trial court entered the following findings:

6) Pursuant to the marking of the corner posts by surveyor Thomas Newport, Plaintiff, Jeffrey Abbott and Defendant, Coy Capps, had a conversation and agreement in the Capps' [sic] kitchen regarding using the Newport survey as the fence line. Pursuant to such agreement Plaintiffs did in fact construct a farm fence along the believed line between the Plaintiffs [sic] and Defendants' parcels of real estate in early 1990. The Court is aware that Capps disputes this but the Court is convinced that the fence line was built by the Plaintiff during this time period as they were the ones who hired Newport to find the old markers with the intention of putting up a fence. Plaintiffs [sic] Exhibit 9 also appears to show the Plaintiff's [sic] put their fence up before

the Defendant's [sic] put up a chain link fence.

\* \* \*

16) The law is with the Plaintiffs, Jeffrey A. Abbott and Teresa J. Abbott, in that the Plaintiffs have exercised a degree of use and control over said parcel that is normal and customary considering the characteristics of the land and have demonstrated an intent to claim full ownership of said tract superior to the rights of all others, particularly the Defendants, and the Plaintiffs [sic] actions with respect to the land are sufficient to give actual or constructive notice to the Defendants of the Plaintiffs' intent and exclusive control, and the Plaintiffs have satisfied each of these elements for more than 10 years. Furthermore, when adjoining landowners agree to erect a fence and treat it as the legal boundary they are estopped from denying that it is the legal boundary line. *Freiburger v. Fry,* 439 N.E.2d 169 (Ind.Ct.App.1982). Use and improvement of the land up to the alleged boundary line may be sufficient to satisfy the requirement of an agreement if the adjoining landowner acquiesces. *Id.* This line is not only binding on those parties but also their successors in interest so long as there was no fraud present in the making of the agreement. *Id.*
17) Title to said 0.021 acre tract is now quieted in the Plaintiffs, Jeffrey A. Abbott and Teresa J. Abbott, husband and wife, and Defendants shall have no ownership of said parcel, and the Plaintiffs have not trespassed upon the lands of the Defendants.

Appellant's App. pp. 8, 10.

█ The trial court correctly stated that, as was the case here, when adjoining landowners agree to erect a fence and treat the fence as a legal boundary, they

are estoppel from denying that this is the legal boundary line. *See Freiburger v. Fry,* 439 N.E.2d 169, 172 (Ind.Ct.App. 1982). The boundary line agreement need not be express and may be inferred from the parties' actions, but there must be evidence of some agreement as to the boundary line. *Id.* Here, the trial court weighed the evidence and found that the parties had met in the Cappses' kitchen, discussed the boundary line, and entered into an express agreement that the Abbotts would construct a farm fence along the boundary line as it was defined by Newport's 1990 survey. The trial court also found that the Abbotts' use and improvement of the land indicated that the Abbotts considered the land to be theirs.

In light of the trial court's findings, we conclude that the Cappses are estopped from denying that the farm fence erected by the Abbotts constitutes the legal boundary line. *See id.* As a result, the trial court's finding that the Abbotts own the parcel in question is not erroneous. Because we conclude that the Cappses, by their own agreement, are estopped from challenging that the farm fence constitutes the legal boundary line between the parties' properties, we need not consider whether the evidence is sufficient to support a finding by adverse possession. Furthermore, to the extent that the Cappses challenge the trial court's findings that the parties agreed to the property line as erroneous, this challenge is merely an invitation to reweigh the evidence, which we decline.

### C. Right to Use Walnut Street

■ The Cappses also contend that the evidence was insufficient to establish that the Abbotts had acquired the right to use the drive, commonly referred to as Walnut Street, by means of a prescriptive easement. Indiana Code section 32–23–1–1 (2006) provides that "[t]he right-of-way, air, light, or other easement from, in, upon, or over land owned by a person may not be acquired by another person by adverse use unless the use is uninterrupted for at least twenty (20) years." Indiana cases have also required that the evidence demonstrate an actual, hostile, open, notorious, continuous, uninterrupted, and adverse use for twenty (20) years under a claim of right, *or* such continuous, adverse use with knowledge and acquiescence of the owner. *Downing v. Owens,* 809 N.E.2d 444, 450 (Ind.Ct.App.2004), *trans. denied; Greenco, Inc. v. May,* 506 N.E.2d 42, 45 (Ind.Ct. App.1987); *Powell v. Dawson,* 469 N.E.2d 1179, 1181 (Ind.Ct.App.1984) (emphasis added). Therefore, we may affirm the trial court's determination that the Abbotts have a right to use Walnut Street by means of a prescriptive easement if the evidence established that there had been continuous, adverse use of the drive by the Abbotts and their predecessors-in-title with the knowledge of the Cappses and their predecessors-in-title for a period of at least twenty years.

■ Whether a prescriptive easement exists is a question of fact. *Searcy v. LaGrotte,* 175 Ind.App. 498, 501, 372 N.E.2d 755, 757 (1978). "It is the general rule that where there has been the use of an easement for twenty (20) years which is unexplained, the presumption is that it is under a claim of right, and adverse, and is sufficient to establish title by prescription unless such use is contradicted or explained." *Reder v. Radtke,* 132 Ind.App. 412, 417, 177 N.E.2d 669, 672 (1961). Furthermore,

[t]he party asserting the prescriptive right may make a prima facie case by showing an open and continuous use of another's land with the owner's knowledge, creating a rebuttable presumption that such use is adverse and under a claim of right. The presumption of a

giant arises from proof of an uninterrupted adverse use for the prescriptive period. However, the presumption of a prescriptive right may be defeated by proof that the use was by permission or not under a claim of right.

*Greenco,* 506 N.E.2d at 45–46.

In *Wilfong v. Cessna Corp.,* 838 N.E.2d 403, 407–08 (Ind.2005), the Indiana Supreme Court found that Wilfong had not established a prescriptive easement to use a private road across the Cessna family's property because there was no evidence establishing that use of the land by Wilfong's predecessors-in-title had been adverse to the interest of the Cessna family. In support of this conclusion, the Court noted the trial court's finding that the Cessna family had granted Wilfong's predecessors-in-title permission to use the roadway. *Wilfong,* 838 N.E.2d at 406. Here, unlike in *Wilfong,* the record is devoid of any evidence suggesting that either the Abbotts or their predecessors-in-title had ever been granted permission to use the drive commonly referred to as Walnut Street by either the Cappses or their predecessors-in-title.

The record established that Walnut Street had been used on a regular basis for ingress to and egress from the Abbotts' property since at least the early 1970s. Nothing in the record indicates that either the Cappses or their predecessors-in-title had ever granted the Abbotts or their predecessors-in-title permission to use Walnut Street. The evidence also established that Walnut Street had never been platted or turned over to the county and was a private access road. Coy Capps testified that although he knew that the Abbotts and their invitees regularly used Walnut Street to access the Abbotts' property, he believed that he had owned the land through which Walnut Sheet ran since he bought his property in 1989. Be-

cause no survey in existence when the Cappses bought their property indicated that the Cappses owned the parcel known as Walnut Street, we infer that Coy Capps's belief that he owned the parcel demonstrates knowledge on behalf of his predecessor-in-title that he owned the parcel. We further infer that, in light of Jeffrey Abbott's testimony that he had been told by his predecessor-in-title that the owner of his property used Walnut Street for ingress to and egress from the property, the Cappses' predecessors-in-title knew that the Abbotts and their predecessors-in-title used Walnut Street for the purpose of ingress and egress from the Abbotts' property. These inferences coupled with the testimony establishing that Walnut Sheet had been used for ingress and egress purposes to the Abbotts' property by farm equipment since at least the 1970s indicate that the Cappses and their predecessors-in-title had knowledge that the Abbotts and their predecessors-in-title were using Walnut Street in a manner that was adverse to then property interest. Additionally, the record established that the Abbotts' use of Walnut Street as the route of ingress and egress for farm equipment interfered with the Cappses' desire to place posts along and to park a vehicle near Walnut Street.

In light of these facts, we conclude that the Abbotts', as well as their predecessors-in-title's, use of Walnut Street constituted an open and continuous use of another's land with knowledge on the part of the owner for the required twenty years. We further conclude th at because nothing in the record indicates that either the Abbotts or their predecessors-in-use had ever been granted permission to use Walnut Street, such use was in fact adverse to the Cappses and their predecessors-in-title. We therefore affirm the determination of the trial court on this ground.

Having concluded that the Abbotts have acquired title to the 0.021 acre parcel of land immediately south of the farm fence which was erected on the parties' boundary line as determined by the 1990 survey, and that the Abbotts have acquired the right to use Walnut Street as a method of ingress and egress by means of a prescriptive easement, we affirm the judgment of the trial court.

The judgment of the trial court is affirmed.

RILEY, J., and BAILEY, J., concur.