

I N T H E

# Court of Appeals of Indiana

Aaron Howe and Kinsey Howe,

*Appellants-Defendants*



FILED

Dec 10 2025, 9:01 am

C L E R K
Indiana Supreme Court
Court of Appeals
and Tax Court

v.

Lehe Farms, Inc. and DK Livestock, LLC,

*Appellees-Plaintiffs*

---

December 10, 2025

Court of Appeals Case No.
25A-PL-226

Appeal from the White Circuit Court

The Honorable Brad A. Woolley, Special Judge

Trial Court Cause No.
91C01-2305-PL-9

---

**Opinion by Judge Weissmann**
Judges Bailey and Brown concur.

**Weissmann, Judge.**

[1] When Aaron and Kinsey Howe (collectively, the Howes) purchased White County farmland in 2022, they discovered that a fence along one side of the property did not align with the legal property line described in their deed. The fence had served as the practical dividing line between neighboring properties for nearly 70 years, but it was positioned approximately 15 to 30 feet west of the surveyed boundary. The Howes removed the existing fence and installed a new one on what they believed to be the true property line. As a result, the Howes effectively claimed a 2.7-acre strip of land (the "Disputed Area") that the neighboring Lehe family had farmed and maintained for decades.

[2] The fence relocation prompted two Lehe family businesses, Lehe Farms, Inc., and DK Livestock, LLC (collectively, "the Lehes"), to file suit. The Lehes sought to quiet title to the Disputed Area under the doctrines of title by acquiescence and adverse possession and, alternatively, sought a prescriptive easement. After a two-day bench trial, the trial court ruled for the Lehes on all claims, prompting this appeal by the Howes. Finding that the trial court correctly applied the doctrine of title by acquiescence, we affirm on that basis.

## Facts

[3] In 1955, Simon Lehe purchased farmland in White County, Indiana. He created a corporation—Lehe Farms, Inc.—to hold the property. Three of Simon's children, including Donald and Dale Lehe, are the current shareholders of Lehe Farms, Inc. Donald and Dale were 7 and 2 years old,

respectively, when Simon purchased the land. Donald Lehe and his wife later created DK Livestock, LLC.

[4] At the time of Simon Lehe's purchase of the land, the property immediately to its west was then owned by the Hendryx family. A fence ran diagonally (northwest-to-southeast) between the properties and served as the functional boundary. Yet this fence was positioned slightly west of the technical legal boundary described in the deeds, allowing the Lehes access to roughly 2.7 acres of land that the deeds attributed to the Hendryx family.

[5] The map below depicts the two adjacent properties. The white shaded area is the Disputed Area—the space between the actual survey boundary to the east and the fence boundary to the west.



Exhs., p. 138.

[6] Although neither family could pinpoint the fence's exact origins, the evidence later revealed at trial established that the fence was in place before the Lehes purchased their property in 1955 and had been treated as the operational boundary between the two properties until this dispute arose. Donald Lehe testified that the fence had been there since his father, Simon, purchased the Lehes' property and that the Lehes had always considered everything east of that fence line to belong to them. Over the years, the Lehes exclusively used the Disputed Area, according to Donald Lehe. He testified that the Lehe family hunted and logged there and that their livestock grazed there.

[7] Georgia Hendryx (Georgia), whose family had been farming the western property since the 1930s, confirmed that the Hendryx family similarly treated the fence as the boundary for operational purposes. Georgia, 86, testified that from at least 1959, her family only used the property to one side of the fence and that the Lehes only used the property on the other side of the fence. For instance, when cattle belonging to one of the families inadvertently escaped to the other side of the fence, the cattle were always returned to their original location, according to Georgia. Georgia also testified that she would not have crossed the fence into the Disputed Area without first seeking the permission of the Lehes.

[8] Both families contributed to maintaining the fence over the years, replacing sections that were damaged by weather or changing vegetation, according to Georgia. When sections of the fence needed to be repaired or replaced, the new or repaired sections were erected close to, but not exactly on, the original fence

line. At the time, Georgia recognized that the replaced sections were not on the deeded property line. But Georgia confirmed that her family had never objected to the Lehes' use and maintenance of the land east of the fence.

[9] In 2021 and 2022, the Howes bought from Georgia and her family members 65 acres of the original Hendryx property. That left the Howes neighbors of the Lehes, who were related. Kinsey Howe is either a daughter or niece to each of the shareholders of Lehe Farms, Inc. The Howes ordered a survey, which showed that their real property line extended further east than the current fence and included the Disputed Area. The Howes asked Dale Lehe to acknowledge the deed line as the true boundary. Dale insisted that the fence line was the legal property line.

[10] At some point, Dale hired a company to grade land in the Disputed Area and to remove a damaged portion of the fence that was rusty and had trees growing through it. When Aaron Howe discovered the ongoing work, he objected. The Lehes installed a temporary electric fence in what they believed was the same location as the removed fence portions. Aaron Howe then removed the remaining fence and installed an electric fence on what he believed was the deeded property line.

[11] This prompted the Lehes to sue to quiet title to the Disputed Area under three theories: title by acquiescence, adverse possession, and prescriptive easement. The trial court conducted a two-day bench trial, at which many members of the Lehe, Howe, and Hendryx families testified. In its findings of fact and

conclusions of law, the court granted judgment to the Lehes on all claims. The Howes appeal.

## Discussion and Decision

The Howes contend the trial court erred in granting the Lehes relief under all three theories: title by acquiescence, adverse possession, and prescriptive easement. Finding title by acquiescence dispositive of this case, we address only that issue.

We review the trial court's findings of fact for clear error and its conclusions of law de novo. *Crider v. Crider*, 15 N.E.3d 1042, 1053 (Ind. Ct. App. 2014). Findings of fact are clearly erroneous only if the record contains no facts to support them, either directly or by inference. *Id.* During this review, we consider only the evidence most favorable to the judgment along with all reasonable inferences supporting the trial court's decision. *Id.*

## I.   Title by Acquiescence

Title by acquiescence is a century-old doctrine "invoked under circumstances in which two property owners share a good faith belief and agree on where the boundary between their parcels lies, which turns out to be inaccurate, for a period of at least twenty years, and that the property owners use that boundary as if it is the actual boundary." *Garrett v. Spear*, 998 N.E.2d 297, 304 n.5 (Ind. Ct. App. 2013). "Thus, the agreed-upon boundary for acquiescence purposes is based upon a *misunderstanding* by the property owners, rather than an attempt by the property owners to change the boundary between the parcels by an

agreement based upon full knowledge of where the true boundary lies." *Id.* (emphasis in original). In other words, title by acquiescence provides a mechanism for resolving boundary disputes when adjoining landowners have, through their conduct, established a practical boundary different from their technical legal boundary.

To establish title by acquiescence, a party must prove by a preponderance of the evidence: (1) the two adjoining landowners' agreement as to where the boundary between their properties lies which turns out to be incorrect; and (2) their acquiescence to and use of the agreed upon boundary for 20 years. *Id.* The trial court correctly found that the Lehes met this burden of proof.

## A.    Agreement Between Owners

The Howes contend that because neither family knew who erected the fence or when it was erected, no agreement to establish a boundary line existed. They argue that the title by acquiescence doctrine requires evidence of an actual agreement between the fence builders and the adjacent property owners, and that subsequent acquiescence by later owners cannot substitute for this foundational requirement.

This argument fundamentally misunderstands both the law and the evidence. First, the Howes conflate the requirement of an "original agreement" with the need to identify the specific individuals who first erected the fence. Title by acquiescence does not require proof of the fence builders' identity or their specific intent. Rather, it requires evidence that at some point at least 20 years

earlier, adjoining landowners agreed—either expressly or implicitly through their conduct—to treat a particular line as their boundary, regardless of when or by whom that line was originally established. *Huntington v. Riggs*, 862 N.E.2d 1263, 1268 (Ind. Ct. App. 2007) (quoting *Freiburger v. Fry*, 439 N.E.2d 169, 172-73 (Ind. Ct. App. 1982)). The parties therefore can agree to treat a preexisting structure as a boundary line.

[18] "Use and improvement of the land up to the alleged boundary line may be sufficient to satisfy the requirements of an agreement if the adjoining landowner acquiesces." *Freiburger,* 439 N.E.2d at 172. This is so because the adjoining landowners' agreement as to the boundary line "need not be express and may be inferred from the parties' actions," although "there must be evidence of some agreement as to the boundary line." *Id.* This agreement "is not only binding on those parties who agree but also their successors in interest as long as there was no fraud present in the making of the agreement." *Id.* No such fraud is alleged here.

[19] The trial court properly found that an implied agreement existed between the adjoining landowners from at least 1955 onward. When the Lehes purchased the property in 1955, they immediately began farming all land east of the existing fence, treating it as part of their property. Donald Lehe, 76, testified that he viewed the fence as the legal boundary between the Lehes and Hendryx properties, and the Lehes exercised ownership rights accordingly. This was not mere use of the land; it was exclusive possession of the Disputed Area based on the Lehes' understanding that the fence marked their property boundary.

[20] The Hendryx family's conduct equally supported the trial court's finding of an agreement. Georgia testified that her family never challenged the Lehes' exclusive use of land east of the fence and never expressly claimed any rights to that area. Georgia also made clear that the Hendryx family would not harvest wood from, grow hay on, or engage in other regular farming activities on the other side of the fence in the Disputed Area because that was "Lehe property." Tr. Vol. III, pp. 15-17. These actions reflect a decades-long implied agreement, understanding, and acceptance of the fence as the boundary line.

[21] Moreover, the evidence here shows more than mere acquiescence to a preexisting fence line. Over the decades, both families rebuilt and repaired the fence in essentially the same place. The Lehes' surveyor confirmed that the fence had remained in substantially the same location for decades, with aerial photographs from 1951 showing the fence within eight feet of where obliterated fence posts were later discovered. Both families actively adopted and reinforced the fence line as their boundary through their conduct.

[22] The Lehes maintained and replaced sections of the fence, farmed exclusively east of it, and made improvements to the Disputed Area. The Hendryx family consistently recognized this arrangement, occasionally helped maintain the fence, and never asserted competing claims. This pattern of mutual recognition and conduct supports the trial court's finding of an implied agreement, not mere passive acquiescence.

## B. Acquiescence and Use for 20 Years

[23] The evidence established that from at least 1955 (when Simon Lehe bought the east property with the preexisting fence) until 2022—a period of 67 years—both families consistently treated the fence as the boundary between their farming operations. This far exceeds the required twenty-year period. *Ball v. Cox,* 7 Ind. 453 (1856) (ruling that "twenty years' acquiescence is necessary to support an implied agreement in a boundary variant from that clearly expressed in the title deeds.")

[24] The trial court's findings regarding the Lehes' exclusive possession of the Disputed Area in accordance with the implied agreement were amply supported by the evidence. Donald Lehe testified that his family had farmed the Disputed Area "up to the fence line" continuously since 1955, treating it as part of their property. Tr. Vol. II, p. 41. The Lehes planted crops, harvested timber, maintained the fence, and exercised other typical incidents of ownership of farmland. Dale Lehe confirmed that the Lehes continuously viewed and treated the Disputed Area as their property.

[25] The Hendryx family's acquiescence in this arrangement lasted years beyond the 20-year period. From 1955 until the property's sale to the Howes in 2022—a period of 67 years—the Hendryx family never challenged the Lehes' use of the Disputed Area or claimed any rights on the other side of the fence. The Howes focus on Georgia's testimony that she did not view the fence as the boundary line between the properties because various fence repairs over the years had resulted in movement of some sections of the fence a few feet in one direction

or the other. However, her overall testimony, along with that of other witnesses, established her family's treatment of the fence as the boundary dating back to at least 1959. The elements of title by acquiescence were met.

## Conclusion

[26] The trial court carefully evaluated extensive testimony showing nearly 70 years of consistent boundary recognition between the Lehes and the Hendryx family. The evidence amply supported the trial court's conclusion that both families, through their conduct, implicitly agreed to the fence as the boundary between their properties.

[27] Because the evidence supports the trial court's finding of title by acquiescence, we affirm.

Bailey, J., and Brown, J., concur.

ATTORNEY FOR APPELLANT

Aaron J. Spolarich
Bennett Boehning & Clary, LLP
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Brian A. Karle
John P. Schafer
Ball Eggleston, P.C.
Lafayette, Indiana